895 P.2d 551

Edward L. CLUFF, Plaintiff–Appellant,

v.

BONNER COUNTY, Defendant–
Respondent,

and

Leroy Maring, and all unknown heirs, suc-
cessors or assigns of Leroy Maring; and
all unknown claimants, their heirs, suc-
cessors and assigns to the following de-
scribed real property in Bonner County
Idaho, to-wit: Government Lot 6 in Sec-
tion 36, Township 55 North, Range 2
East, Boise Meridian, Bonner County,
Idaho, Defendants.

No. 20803.

Supreme Court of Idaho,
Coeur d'Alene, October 1994 Term.

May 1, 1995.

Rehearing Denied June 6, 1995.

Everett D. Hofmeister, Coeur d'Alene, for appellant.

Steven C. Verby, Sp. Prosecutor, Sandpoint, for respondent.

SILAK, Justice.

This is a quiet title action. Appellant Edward L. Cluff (Cluff) appeals from a judgment of the district court ruling that Bonner County (the County), has all right, title and interest in a 41.97 acre tract of timber land in the County. The action previously reached this Court in *Cluff v. Bonner County,* 121

Idaho 184, 824 P.2d 115 (1992) (*Cluff I*), after the district court awarded summary judgment to the County. In *Cluff I*, this Court vacated summary judgment, finding genuine issues of material fact existed regarding whether Cluff could establish the elements of adverse possession. Upon remand, a bench trial was held, and the district court again entered judgment in favor of the County. We vacate the district court's judgment and remand the case for further proceedings consistent with this opinion.

## I.

### FACTS AND PROCEDURAL BACKGROUND

The facts and procedural background relevant to the first appeal were set forth in *Cluff I*, 121 Idaho at 185; 824 P.2d at 116.[1] On appeal in *Cluff I*, we vacated the district court's summary judgment order, holding that the County's claim of ownership under the corrected tax deed gave it sufficient status to appear as a defendant, and that there were material factual issues in dispute regarding whether Cluff had sufficiently proven adverse possession.

On remand to the district court, a court trial was held and the court thereafter issued its findings of fact and conclusions of law. With respect to Cluff's claim of ownership through adverse possession, the court found that Cluff had not met the "improvement" requirement of I.C. § 5–210, and that he also failed to satisfy the requirement that he continuously possessed the property for a full five year period prior to commencing the action. The court further found that even if Cluff had proven all of the elements of adverse possession, he still would not have been entitled to have the title to Lot 6 quieted in him because he had been employed by the County assessor's office, and public policy precluded Cluff from using his public employment for private gain. Finally, the court found that as between Cluff and the County,

1. In 1922, the United States government conveyed 141.97 acres of land (the land) in Bonner County (the County) to Leroy Maring by a patent (the patent) that was recorded in the records of the County. The legal description in the patent included property designated as Lot 6. In 1923, the assessor of the County (the assessor) began assessing real property taxes on the land, except that the legal description used by the assessor did not mention Lot 6. After 1931, Maring did not pay the real property taxes assessed by the County. In 1940, the County received a tax deed to the land, not including Lot 6. The assessor listed the United States government as the owner of Lot 6.

   In 1984, a United States Forest Service employee informed the assessor that the United States did not own Lot 6. The assessor then recorded the patent again and began assessing real property taxes on Lot 6 to Maring. Maring did not pay the taxes.

   Edward L. Cluff, an employee of the assessor, learned that no one was paying the taxes on Lot 6 and became interested in acquiring Lot 6, which is isolated timberland with a creek running through it. Cluff visited Lot 6 several times during the summer of 1984. While he was on Lot 6, Cluff moved a tree, altered the course of the creek, and, as he said later in his deposition, did "lots of little things." During the next five years Cluff made occasional hunting, fishing, and overnight camping trips to Lot 6. Cluff posted "Private Property" signs at all reasonable access points to Lot 6. He informed the neighboring land owner of his claim to Lot 6 and asked to be contacted if anyone trespassed on Lot 6. He contacted the United States Forest Service to obtain an easement for access to Lot 6. He contacted the Idaho Department of Fish and Game concerning a riparian improvement program for Lot 6. He completed some and initiated other erosion control projects on Lot 6. He developed a timber management program for Lot 6 and cultivated the timber stand by thinning and cleanup operations. Cluff paid the real property taxes assessed on Lot 6 for the years 1984 through 1988. Cluff also tried to locate Maring or Maring's heirs to arrange a possible purchase of Lot 6.

   In 1989, Cluff filed an action to quiet title to Lot 6, naming as defendants Maring, Maring's heirs, successors or assigns, and all unknown claimants to Lot 6. Cluff served Maring with process by publication. Maring did not appear in the action. The County filed an answer to the complaint admitting that Cluff had paid taxes on Lot 6, but alleging that Cluff had no valid interest in Lot 6, and that he had misused his position at the assessor's office to have tax notices for Lot 6 sent to him.

   Cluff moved to dismiss the County's answer or to have it stricken, to have a default judgment entered against the County, or for summary judgment in his favor. The County executed a correction to the 1940 tax deed. The corrected tax deed conveyed Lot 6 to the County. The County then moved for summary judgment.

   The trial court denied Cluff's motions and granted the County's motion for summary judgment dismissing Cluff's quiet title action. Cluff appealed.

the County has superior right, title, and interest to Lot 6 based upon the 1990 corrected tax deed. Cluff appealed.

The first issue raised by Cluff on appeal was whether, in order for title to be quieted in him, Cluff was required to prove the elements of adverse possession against a party which allegedly had never been the record owner and had never occupied or made use of the property. The second issue raised by Cluff was whether the County could issue a corrective tax deed to itself without compliance with the applicable notice statutes where the property at issue was never included in a former tax deed.

## II.

## ANALYSIS

### A. THE DISTRICT COURT DID NOT ERR IN RULING THAT CLUFF HAS NOT PROVEN, BY CLEAR AND SATISFACTORY EVIDENCE, THE REQUIREMENTS OF ADVERSE POSSESSION.

■ As a preliminary matter, we note our standard of review. On appeal, this Court will not disturb the district court's factual findings if supported by substantial and competent evidence. *Corporation of Presiding Bishop v. Ada County,* 123 Idaho 410, 415, 849 P.2d 83, 88 (1993); *Evangelical Lutheran Good Sam. Soc. v. Board of Equalization of Latah County,* 119 Idaho 126, 129, 804 P.2d 299, 302 (1990). However, the reviewing court is not bound by the legal conclusions of the district court and is free to draw its own conclusions from the facts presented. *Corporation of Presiding Bishop v. Ada County,* 123 Idaho at 415; 849 P.2d at 88.

Cluff originally filed this quiet title action based upon the theory of adverse possession pursuant to I.C. §§ 5–209 and 5–210. The action was brought against Leroy Maring, all his unknown heirs, successors and assigns, and all unknown claimants, their heirs, successors and assigns. Leroy Maring never entered an appearance, but the County intervened as a defendant. After remand, Cluff attempted to prove to the trial court his entitlement to Lot 6 through adverse posses-

sion. In its findings of fact and conclusions of law, the district court found that Cluff had failed to do so and quieted title in the County.

■ On this appeal, Cluff argues for the first time that he is not required to prove his ownership upon a theory of adverse possession. Rather, Cluff claims that he only had to establish adverse possession as against Leroy Maring, the original owner of Lot 6, but that since Maring never appeared and was in default, Cluff did not have to prove anything as to Maring. As against the County, Cluff claims that he is not required to prove the elements of adverse possession because the County was never the record owner of the property. Cluff claims that as against the County, the question before this Court (even though it was not before the trial court), is simply who has a better claim to Lot 6, Cluff or the County. At oral argument before this Court, Cluff referred to this theory as "abandonment". Although Cluff originally filed this quiet title action against Maring, he also filed it against "all unknown claimants". The County is an unknown claimant, and Cluff must therefore prove ownership against the County under the same theory on which he would have had to proceed if Maring had not defaulted. We therefore hold that Cluff's "abandonment" argument is wholly without merit, and that under the circumstances of this case, the only manner in which title to Lot 6 can be quieted in him is by proving the elements of adverse possession.

At oral argument, Cluff withdrew his appeal on the adverse possession claim. We therefore affirm the district court's findings of fact and conclusions of law that Cluff did not satisfy his burden of proving all essential elements of adverse possession. Thus, Cluff is not entitled to have title to Lot 6 quieted in him.[2]

### B. THE COUNTY'S TAX DEED WAS NOT ISSUED IN ACCORDANCE WITH RELEVANT STATUTORY REQUIREMENTS.

The district court concluded below, without making specific findings, that the evidence

---

**2.** The district court also found that Cluff was not entitled to have title to Lot 6 quieted in him even

if he could meet the requirements of I.C. §§ 5–209 and 5–210. The court found that because

conclusively established that the County was entitled, in 1940, to Lot 6 for non-payment of taxes and that the corrected tax deed "has a legitimate basis". The "corrected tax deed" in this case was actually issued on January 17, 1990, after the commencement of this suit. The deed purported to correct the tax deed issued in 1940 which omitted Lot 6. This corrected tax deed was created and executed after the commencement of this suit, after the County appeared in the case and after it had accepted payment of taxes. On appeal, Cluff argues that the deed issued after the commencement of this action was not a corrected deed since the original tax deed did not describe Lot 6, but rather was in fact a new tax deed issued without prior compliance with the statutes for issuance of such a deed. We agree.

■ Pursuant to I.C. § 63–1124, after the issuance of a tax deed, the record owner or party in interest may redeem the property up to the time the county commissioners have entered into a contract of sale or the property has been transferred by county deed or three years has passed, whichever comes first. In order to redeem the property, the owner must pay all delinquent taxes including the penalty, accrued interest, and costs, including title search fees.

I.C. § 63–1126A provides:

Issuance of tax deed—General provisions.—If the property for which a delinquency entry is made is not redeemed within three (3) years from the date of delinquency entry, the county treasurer of the county wherein such property is situated must make in favor of said county, a tax deed for such property. However, *the county shall not be entitled to a tax deed for such property until (1) a notice of pending issue of tax deed be given, as required by section 63–1126B, Idaho Code, and (2) an affidavit of compliance be filed, as required by section 63–1126C, Idaho Code.*

(Emphasis added).

I.C. § 63–1126B provides the method and the time frame within which notice of the

issuance of the tax deed must be given. I.C. § 63–1126C provides that the county treasurer must make an affidavit at least five days before the tax deed is issued, stating that he or she has complied with the notice provisions of I.C. § 63–1126B. The affidavit must state with particularity the facts relied on as constituting such compliance.

■ We hold that the issuance of the tax deed was clearly not in compliance with the applicable statutes and therefore is void. There is no evidence of any notice given whatsoever. Further, the 1990 tax deed states:

WHEREAS, The Tax Collector did heretofore, at the time prescribed by law, issue a notice, partly written and partly printed stating when the delinquency entry was made, in whose name the property was assessed, the description of said property, for what year taxed or assessed, and that a deed would issue to the County on the First day of January, 1939; and did serve the said notice on the 15th day of September, 1938, ... upon the record title owner thereof, LeRoy Maring ...

It is self-evident that the County treasurer who signed the corrected tax deed in 1990 was unable to truthfully recite the compliances required by law that took place in 1938 as was done in that deed regarding events which took place more than fifty years ago. Although the County apparently is claiming that this 1990 tax deed is not a new tax deed, but simply a correction to the 1940 tax deed by including Lot 6 to the description which was allegedly mistakenly omitted, we do not agree. We hold that the district court erred in concluding that the evidence conclusively established that the County was entitled to Lot 6 in 1940 for non-payment of taxes. The record is not clear exactly why Lot 6 was not part of the tax deed. In any event, if the County were to validly issue a tax deed to Lot 6 in 1990, it must have complied with all applicable statutes. Thus, we vacate that

---

Cluff was employed by the County as a deputy assessor at the time he learned that the United States did not own Lot 6, and because public employees are trustees with a fiduciary duty to

the people, public policy precluded Cluff from using his public employment for private gain. Because Cluff withdrew his adverse possession claim, we need not reach this issue.

portion of the district court's order declaring that the County has superior right, title and interest to Lot 6. Title to Lot 6 remains in Leroy Maring, and all his heirs, successors and assigns.

### III.

### CONCLUSION

We affirm the district court's ruling that Cluff failed to prove the elements of adverse possession pursuant to I.C. §§ 5–209 and 5–210 because at oral argument Cluff withdrew his appeal on the adverse possession issue. Cluff's argument that he was not required to prove adverse possession as against the County, raised for the first time on this second appeal, is wholly without merit.

We vacate the trial court's ruling quieting title in the County because the tax deed was not issued according to relevant statutes. The case is remanded for entry of judgment in accordance with this opinion.

No attorney's fees on appeal. Costs on appeal are to be apportioned between Cluff and the County.

McDEVITT, C.J., and JOHNSON, TROUT, JJ., and LEGGETT, J. Pro Tem., concur.