900 P.2d 191

127 Idaho 283

**DOWNEY CHIROPRACTIC CLINIC,**
**Plaintiff–Respondent–Cross**
**Appellant,**

v.

**NAMPA RESTAURANT CORPORATION,**
d/b/a Shilo Restaurant and Lounge, and
Liberty Northwest Insurance Corpora-
tion, Defendants–Appellants–Cross Re-
spondents.

No. 20903.

Supreme Court of Idaho,
Boise, December 1994 Term.

July 10, 1995.

Rehearing Denied Aug. 31, 1995.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for appellants. Derrick J. O'Neill argued.

White, Peterson, Perry, Pruss, Morrow & Gigray, P.A., Nampa, for respondent. Christopher S. Nye argued.

McDEVITT, Chief Justice.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

The facts of this case, as found by the magistrate, are as follows:

Norman Peterson (Peterson) was employed as a *sous* chef for Nampa Restaurant Corporation's Shilo Inn restaurant in Nampa, Idaho. Peterson injured his back in the course of his employment on May 20, 1990. Liberty Northwest Insurance Corporation (Liberty) is Shilo Inn's surety for worker's compensation claims.

On June 11, 1990, Peterson sought chiropractic treatment from Dr. John Downey, doing business as Downey Chiropractic Clinic (Downey).

On July 6, 1990, Liberty's claims adjustor, Tom Harrison (Harrison), became aware of Peterson's claim for benefits and informed him that Nampa Restaurant Corporation had a designated medical provider, Medical Center Physicians. Harrison then advised Peterson that, unless he undertook treatment by that provider, his temporary total disability benefits would cease. When Peterson informed Harrison that he would like to continue treatment with Downey, Harrison further advised Peterson that any future such treatment would be at his own expense. Harrison did not base this determination on any medical consultation with a health care provider, or on the basis of a physical examination of Peterson.

As a result of this conversation, Peterson terminated his treatment with Downey, despite the fact that Downey offered to continue treatment free of charge if Liberty would not pay. Peterson declined this offer because he felt it would be wrong to accept free treatment.

At the time Peterson discontinued treatment with Downey, Downey was uncertain as to Peterson's prognosis, but gave a conservative estimate that Peterson would require eight weeks of additional treatment. On July 17, 1990, Peterson was evaluated by an orthopedic surgeon, Dr. Schneider, who diagnosed Peterson's condition as a herniated disk. Dr. Schneider testified that the conservative chiropractic treatment that Peterson had received was reasonable given his condition, and that such treatment would have continued to be reasonable for at least another month. After receiving additional physical therapy, Peterson eventually underwent surgery.

Downey filed this action on May 29, 1991, followed by an amended complaint two days later. In his complaint, Downey claimed that Liberty intentionally interfered with Downey's prospective economic relationship with Peterson by refusing to pay for Downey's continued treatment of Peterson. Downey prayed for judgment against Liberty in the amount of $1,118.00 together with accruing interest to the date of judgment, and statutory interest from and after the date of judgment. Downey also prayed for relief to amend his complaint to include punitive damages and for an award of attorney fees.

On July 18, 1991, Liberty filed a Motion to Dismiss pursuant to I.R.C.P. 12(b)(1), challenging the magistrate court's jurisdiction. That motion was denied, and the matter was tried on July 17, 1992. Liberty again moved to dismiss for lack of jurisdiction, which motion was likewise denied. Judgment for Downey was entered on September 17, 1992.

As the prevailing party, Downey moved for an award of reasonable attorney fees under I.C. § 12–120(1) and (3). The court granted Downey's motion and an amended judgment was entered November 30, 1992.

Liberty appealed the case to the district court. Downey cross-appealed for attorney fees on appeal under I.C. § 12–120(1). Judgment affirming the magistrate's decision in favor of Downey, but denying Downey's motion for attorney fees on appeal, was entered by the district court on September 7, 1993.

Liberty now appeals to this Court.

## II.

## ANALYSIS

■ This Court exercises free review over questions of law. When this Court reviews a case appealed from the district court's appellate review of a magistrate's decision, we independently review the magistrate's decision, giving due regard to the district court's ruling. *Ausman v. State,* 124 Idaho 839, 840–41, 864 P.2d 1126, 1127–28 (1993).

## III.

## SUBJECT MATTER JURISDICTION

■ The threshold issue in this appeal is whether the magistrate court had jurisdiction to adjudicate this matter. Liberty argues that the magistrate court did not have subject matter jurisdiction to adjudicate Downey's claim because it presents a question of law arising under our worker's compensation law, namely: Whether Liberty, as Shilo Inn's surety, has a statutory duty to pay for Downey's reasonable medical treatment of Peterson.

■ The Idaho Industrial Commission (Commission) has exclusive jurisdiction of all questions arising under our worker's compensation law. I.C. § 72–707. As we recently noted in *Van Tine v. Idaho State Ins. Fund,* 126 Idaho 688, 889 P.2d 717 (1994), when a claim arises under our worker's compensation laws, the trial court lacks jurisdiction. *Id.* at 689, 889 P.2d at 718. Thus it is our task to examine the worker's compensa-

tion law to determine whether there is any portion of that law under which the present claim may be said to arise. *Id.*

In *Van Tine,* the plaintiffs alleged that the employer's surety violated its duty of good faith and fair dealing and its fiduciary duty by initially refusing to satisfy Kerby Van Tine's worker's compensation claims. *Id.* The district court dismissed the Van Tines' claim for lack of subject matter jurisdiction. *Id.* We affirmed the district court's dismissal, concluding that:

> To the extent that the Van Tines allege that SIF contested claims for compensation without reasonable ground, refused within a reasonable time to pay compensation, or without reasonable ground discontinued payment of compensation justly due and owing, their claims arise under I.C. § 72–804, and the trial court did not have jurisdiction over the claims.

*Id.*

Here, Downey's claim does not arise under, nor require interpretation or application of, our worker's compensation law. Rather, it is a separate tort, wholly distinct from our worker's compensation statutory scheme. Unlike the plaintiffs' claim in *Van Tine,* our worker's compensation law does not provide a remedy for Downey's claim. Thus, the exclusive jurisdiction of the Commission is not implicated.

## IV.

## THE MAGISTRATE COURT DID NOT ERR IN ALLOWING DOWNEY'S CLAIM FOR INTENTIONAL INTERFERENCE WITH A PROSPECTIVE ECONOMIC RELATIONSHIP

A. THE TORT OF INTENTIONAL INTERFERENCE WITH A PROSPECTIVE ECONOMIC RELATIONSHIP.

■ In *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 824 P.2d 841 (1991), we held that, in order to establish a *prima facie* case of intentional interference with a prospective economic relationship, a plaintiff must show that the claimed interference was wrongful by some measure beyond the fact of the interference itself. *Id.* at 286,

824 P.2d at 861. Accordingly, the plaintiff must prove that:

> (1) The defendant had an improper purpose or objective to harm the plaintiff; or
> (2) The defendant used a wrongful means to cause injury to the prospective business relationship.

*Id.*

In so ruling, we adopted the Oregon Supreme Court's formulation of this tort, as outlined in *Top Serv. Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201, 582 P.2d 1365 (1978). In that case, the plaintiff alleged that Allstate:

> sought to and did induce Top Service's patrons not to have Top Service repair their automobiles, *making false statements about the quality of plaintiff's workmanship and threats about withdrawing insurance coverage or subjecting the settlement of claims to possible arbitration.*

*Id.* 582 P.2d at 1371. Top Service also alleged that Allstate's conduct was "with the sole design of injuring Plaintiff and destroying his business." *Id.* The Oregon Supreme Court held that these allegations, if proven along with causation and damages, would satisfy the elements of the tort of intentional interference with a prospective economic relationship. *Id.*

Although there was no direct evidence that Allstate acted with a specific purpose to destroy Top Service's business, Top Service argued that such a purpose could be inferred from evidence of Allstate's conduct in directing customers to other body repair shops. *Id.* at 1371–72. However, the Oregon Supreme Court ruled that the record would not support such an inference. *Id.* at 1372. In particular, the court held that Allstate's designation of certain repair shops as "competitive shops" to which it preferred to send insurance claimants, together with its discontinued use of Top Service as a "drive-in" shop where claimants were directed for estimates by an Allstate claims adjuster following a dispute with Top Service, and Allstate adjusters' active discouragement of claimants' use of Top Service and their disparagement of the quality of Top Service's work, were acts "wholly consistent with Allstate's pursuit of its own business purposes as it saw them and did not suffice to support an infer-

ence of the alleged improper purpose to injure Top Service." *Id.*

In discussing the elements necessary to establish the tort of intentional interference with a prospective economic relationship by improper means, the *Top Service* court stated that improper means may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of a trade or profession. *Top Serv.*, 582 P.2d at 1371. Some additional examples of improper means cited by the *Top Service* court include violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood. *Id.* at 1371 n. 11. However, while the court stated that Allstate's conduct may well have constituted intentional interference with a prospective economic relationship by improper means, it did not reach that issue because the case had not been submitted to the jury on that theory.

## B. DOWNEY'S CLAIM

■ Like the defendant's conduct in *Top Service*, Liberty's insistence that Peterson receive treatment from Shilo Inn's designated medical provider, its threat to discontinue Peterson's temporary total disability benefits if he refused to seek treatment from the designated provider, and its refusal to pay for Peterson's continued treatment by Downey do not support an inference that Liberty's sole motivation was to harm Downey.

However, while the above cited conduct does not support an inference that Liberty's sole motivation was to harm Downey, such conduct is contrary to established professional standards for sureties. Thus, Liberty employed improper means to cause injury to Downey's prospective economic relationship with Peterson and, as a matter of law, judgment was properly entered in favor of Downey.

## V.

## THE MAGISTRATE COURT DID NOT ERR IN AWARDING DOWNEY ATTORNEY FEES PURSUANT TO I.C. § 12–120(1)

■ Liberty next argues that, because Downey prayed for leave to amend his com-

plaint to seek punitive damages in addition to the $1,118.00 he sought in actual damages, it was error for the magistrate to award him attorney fees pursuant to I.C. § 12–120(1).[1] Liberty bases this argument on the limitation of that statute's application to "any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less[.]" I.C. § 12–120(1).

However, at the time Liberty briefed this issue, it did not have the benefit of this Court's decision in *Cox v. Mueller*, 125 Idaho 734, 874 P.2d 545 (1994). In *Cox*, we noted that I.C. § 12–120(1) and our decision in *Pancoast v. Indian Cove Irrigation Dist.*, 121 Idaho 984, 829 P.2d 1333 (1992), place a "premium on the pleadings." *Cox*, 125 Idaho at 737, 874 P.2d at 548. Thus we held that the district court erred when it construed a statement by Cox's counsel during closing argument, to the effect that the jury was free to decide whether to award more than $25,000 in damages, as a waiver of Cox's entitlement to attorney fees under I.C. § 12–120(1). *Id.*

Similarly, Downey's unutilized prayer for leave to amend his complaint to seek unspecified punitive damages should not be construed as a waiver to his entitlement to attorney fees under this statute. As we noted in *Cox:*

> The obvious purpose of I.C. § 12–120(1) is to discourage litigation, since the statute requires the defendant to be notified of the plaintiff's claim against the defendant for

at least ten days before a complaint can even be filed. In the event that a complaint is filed, the statute again encourages early settlement by requiring that the pleadings warn the parties that this statute will be invoked for mandatory attorney fees.

*Id.* By pleading actual damages of $1,118.00, including a prayer for attorney fees, and otherwise complying with the terms of I.C. § 12–120(1), Downey gave Liberty sufficient notice of the amount of his claim as well as his intent to seek attorney fees. Thus, the magistrate court's award of attorney fees was proper.

## VI.

## DOWNEY IS ENTITLED TO ATTORNEY FEES ON APPEAL PURSUANT TO I.C. § 12–120(1)

Downey argues on cross appeal that it was error for the district court to deny him attorney fees as the prevailing party on appeal to that court. Although Downey requested attorney fees pursuant to I.C. § 12–120(1), the district denied Downey's request based on the discretionary language of I.C. § 12–121 [2] and I.R.C.P. 54(e)(1), which limits the discretionary application of I.C. § 12–121 to those cases which the court finds are "brought, pursued or defended frivolously, unreasonably or without foundation." This was error.

This Court has held that I.C. § 12–120(3) [3] generally mandates an award of attorney

1. **12–120. Attorney fees in civil actions.**—(1) Except as provided in subsection (3) of this section, in any action where the amount pleaded is twenty-five thousand dollars ($25,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney fees. For the plaintiff to be awarded attorney fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action; provided, that no attorney fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action, an amount at least equal to ninety-five percent (95%) of the amount awarded to the plaintiff.

2. **12–121. Attorney's fees.**—In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees.....

3. **12–120. Attorney fees in civil actions.**—

....

(3) In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services and in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

fees to the prevailing party on appeal as well as at trial. *Bott v. Idaho State Bldg. Auth.*, 122 Idaho 471, 481, 835 P.2d 1282, 1292 (1992). In light of the fact that the language of both I.C. § 12–120(1) and I.C. § 12–120(3) is mandatory, the holding of *Bott* equally pertains here. Thus, Downey is entitled to an award of attorney fees as the prevailing party on appeal to the district court, pursuant to I.C. § 12–120(1). Likewise, Downey is entitled to an award of attorney fees as the prevailing party on appeal to this Court.

## VII.

### CONCLUSION

For the foregoing reasons, we affirm the magistrate's decision in favor of Downey's claim that Liberty tortiously interfered with his prospective economic relationship with Peterson. We likewise affirm the magistrate's award of attorney fees to Downey pursuant to I.C. § 12–120(1). We reverse the district court's denial of an award of attorney fees to Downey on appeal to that court, and we award attorney fees to Downey as the prevailing party on appeal to this Court. Costs on appeal are awarded to Downey, pursuant to I.A.R. 40.

JOHNSON, TROUT and SILAK, JJ., and GUITIERREZ, Justice Pro Tem, concur.