917 P.2d 757

**Carla C. JENSEN, Plaintiff–Appellant,**

**v.**

**Stephen R. JENSEN, Defendant– Respondent.**

No. 22004.

Supreme Court of Idaho, Boise, December 1995 Term.

May 29, 1996.

Hyde, Wetherell, Bray, Haff & French, Chtd., Boise, for appellant. Christopher D. Bray argued.

Cosho, Humphrey, Greener & Welsh, Boise, for respondent. Stanley W. Welsh argued.

McDEVITT, Chief Justice.

This is a child support modification case. The appellant, Carla Jensen (Carla), appeals the decision of the magistrate division that denied, in part, her request to award child support above the Idaho Rules of Civil Procedure, Rule 6(c)(6), Idaho Child Support Guidelines (I.C.S.G.) $70,000 figure. The respondent, Stephen Jensen (Stephen), does not challenge the magistrate's finding of a substantial change in circumstances since the last order modifying the divorce decree. We vacate in part and remand the magistrate's ruling.

## I.

### BACKGROUND AND FACTS

Stephen and Carla were married on July 27, 1974, and divorced on September 22, 1983. Carla and Stephen had two children as issue of their marriage, Travis Jensen and Jordan Jensen (collectively referred to as the children). Travis was born on February 6,

1979, and Jordan was born on February 26, 1981. At the time of their divorce the parties' standard of living was upper middle class.

The original divorce decree awarded physical and legal custody of Travis and Jordan to both Carla and Stephen. Carla was awarded primary physical custody of both of the children, with Stephen having visitation rights. Stephen was ordered to pay $500 per month in child support. Stephen's support obligation during the summer months was reduced to account for the time the children would be in Stephen's custody.

On May 4, 1987, Carla filed a motion to modify the 1983 divorce decree. On June 8, 1987, Stephen's support payments were increased to $750 per month, providing a payment reduction for the summer months when Stephen had custody of the children. In addition, Stephen was ordered to pay any medical expenses of the children.

In 1987, Carla and the children left Idaho so that Carla could attend graduate school in Colorado. Carla borrowed $50,000 in student loans in order to provide for the needs of herself, the children, and the children's psychotherapy needs. These loans have not been paid off.

In 1990, Carla finished graduate school and started employment in Fox Point, Wisconsin. Carla's gross income in 1993 was $103,000. About $48,000 of her income was attributable to her work at the University of Wisconsin, and about $55,000 of her income was attributable to her work at the Family Service of Milwaukee. Carla quit her employment with the University of Wisconsin in June 1994, due to a newly enforced rule at the University of Wisconsin which prohibited full-time instructors from working more than eight hours per week of outside employment. The enforcement of this rule was the subject of a pending lawsuit. In 1994, Carla was paid $24,000 by the University of Wisconsin for working one half of the school year. Carla predicted her income from Family Service would remain the same, subsequent to leaving her employment with the University of Wisconsin.

Stephen was a part owner of Jensen Real Estate and had an annual income of $191,027.

On February 22, 1994, Carla filed a motion to modify the last order that modified the divorce decree. Carla and Stephen did not dispute the fact that their combined incomes were over $70,000, the top figure provided for in Section 10(a) of the I.C.S.G. Carla requested the magistrate adopt a formula that would compute additional support, above the I.C.S.G. $70,000 figure, by using a flat percentage of 15% of the remainder of income available to the parties. In the alternative, Carla requested that the magistrate determine whether the amount of support, at the I.C.S.G. $70,000 figure, was sufficient to meet the needs of the children, and if not, requested the magistrate to award support above the I.C.S.G. $70,000 figure.

The magistrate issued a memorandum decision on September 8, 1994. Based upon the I.C.S.G. Sections 10(a) and 10(c), the magistrate ordered Stephen's support payments to be increased to $834.25 and, in addition, that Stephen pay for Jordan's violin lessons, pay for the children's travel expenses to and from Idaho, and that Stephen pay 71% of the children's orthodontic expenses. The magistrate based its decision upon all relevant factors, including the factors set forth in Section 10(c) of the I.C.S.G:

(1) The financial resources of the child.

(2) The financial resources, needs and obligations of both parents, consistent with Section 6(a)(3).

(3) The standard of living the child enjoyed during the marriage.

(4) The physical and emotional condition and needs of the child, including educational needs.

(5) Any special impairment, limitation or disability of the child and any need for special education.

(6) Any special ability or talent of the child and the cost of educating or training that ability or talent.

(7) Any special living conditions that create additional costs for the child.

I.C.S.G. Section 10(c).

The magistrate found that subsections (1), (3), (5), and (7) of Section 10(c), were inappli-

cable based upon the evidence presented in the case. The magistrate applied the three remaining factors to the exhibits and testimony presented at trial. The magistrate rejected Carla's flat percentage theory.

The magistrate first considered the financial resources of the children and found that the children had no independent financial resources. The magistrate rejected Section 10(c)(3) as inapplicable in this case, based upon its finding that the children's standard of living during the marriage was about the same as the children's current standard of living. The magistrate concluded that neither of the children had any special impairments, limitations, or disabilities and that there were no special educational needs. Finally, the magistrate found no special living conditions that would require additional support for the children.

In considering the remaining three factors, the magistrate first considered the financial resources of Carla and Stephen, pursuant to I.C.S.G. Section 10(c)(2). The magistrate found that Carla's Guidelines Income was $79,000.[1] The magistrate found that Stephen had a sufficient disposable income to provide the needs of the children.

The magistrate next considered whether the children had any physical and emotional conditions and needs that would warrant an award of additional support, pursuant to I.C.S.G. 10(c)(4). Carla proffered exhibit 10 to illustrate the children's monthly expenses and needs. The magistrate considered the expenses listed in exhibit 10 and concluded that some of the figures Carla represented as the children's monthly expenses and needs were exaggerated, and that, even if such amounts were accurate, they were so unreasonable that the magistrate would not accept them. The magistrate specifically noted that, based upon the testimony, the cost of

each lunch meal, per child, was $2.00, indicating that Carla's exhibit 10 estimate of $1,170 per year for the children's lunch meals was overestimated by at least $450 per year. Carla's exhibit 10 budgeted $433 per month for clothing for the children. The magistrate found that while "the raising of two teenage children is expensive, ... there has to be some amount of reasonableness injected into the child raising process." The magistrate found that the amount budgeted for child care expenses in Carla's exhibit 10, $3,667, was incorrect, and that Carla had indicated that it would "not be necessary to have child care which would reduce that figure from $3,667 to $1,200, a reduction of $2,467."[2] In addition, the magistrate found that Stephen had agreed to pay all travel expenses for the children, to and from Idaho, eliminating $1,020 annually from Carla's budget in exhibit 10.

The magistrate did not totally disregard the evidence contained in exhibit 10; the magistrate found that Jordan's violin lessons would be properly awarded as additional support, above the I.C.S.G. $70,000 figure. The magistrate denied any other additional support, based upon Carla's failure to provide the magistrate with evidence indicating the children had needs that required additional support above the I.C.S.G. $70,000 figure.

The magistrate ordered Stephen to pay, in addition to his monthly child support obligation, for the children's travel expenses to and from Idaho, costs for Jordan's violin lessons, and for prescription costs not reimbursed by Carla's insurance company. The magistrate also ordered Carla to pay 29% and Stephen to pay 71% of the children's orthodontic expenses.

Carla appealed the magistrate's memorandum decision and order to the district court. The district court affirmed the magistrate's decision. Carla appealed the magistrate's decision to this Court.

---

1. The magistrate found Carla's guidelines income was $79,000, based upon Carla's testimony that her income from Family Service would remain at $55,000 and that Carla could either find another teaching position that allowed for outside work, or she could return to the University of Wisconsin, in the event the restriction on outside work hours was subsequently overturned. Carla did not raise as an issue on appeal, the magistrate's determination of the amount of her income.

2. While the testimony was not clear regarding what the proper amount was for "housekeeping/child care" in Carla's exhibit 10, the appellant did not challenge on appeal the magistrate's finding that Carla's figure for housekeeping/child care was incorrect and that the proper amount was $1,200, a reduction of $2,467 per year.

## II.

### ISSUES PRESENTED ON APPEAL

The following issues were raised on appeal:

(1) Whether the magistrate erred in determining the amount of child support.

(2) Whether the magistrate erred in refusing to apportion basic household expenses between Carla and the children for purposes of determining child support.

(3) Whether the magistrate abused its discretion in finding that certain items listed in Carla's exhibit 10 were unreasonable.

(4) Whether the magistrate abused its discretion in denying Carla attorney fees below.

(5) Whether either party is entitled to attorney fees on appeal.

## III.

### STANDARD OF REVIEW

When reviewing decisions of a magistrate, the Court will uphold the magistrate's findings of fact if they are supported by substantial and competent evidence. *Ireland v. Ireland*, 123 Idaho 955, 958, 855 P.2d 40, 43 (1993). The Court exercises free review over questions of law. *Downey Chiropractic Clinic v. Nampa Restaurant Corp.*, 127 Idaho 283, 285, 900 P.2d 191, 193 (1995). This Court is not bound by the legal conclusions of the magistrate, and is free to draw its own conclusions from the facts presented. *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.*, 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995); *Cluff v. Bonner County*, 126 Idaho 950, 952, 895 P.2d 551, 553 (1995). This Court independently reviews the decision of a magistrate, with due regard for a district court's decision that was made in an appellate capacity. *Noble v. Fisher*, 126 Idaho 885, 888, 894 P.2d 118, 121 (1995).

## IV.

### THE MAGISTRATE ERRED IN APPLYING THE I.C.S.G. SECTION 10(C) FACTORS TO THE EVIDENCE PRESENTED

The decision to modify a child support order involves a two-step process, (1) whether there has been a substantial change of circumstances, and (2) determining the amount of the modification. *Ireland*, 123 Idaho at 960, 855 P.2d at 45. The amount of the modification is left to the sound discretion of the trial court. *Levin v. Levin*, 122 Idaho 583, 588, 836 P.2d 529, 534 (1992). The amount of child support is to be calculated based upon the factors set forth in I.C. Section 32–706 and the I.C.S.G. I.C. Section 32–706A(C). The amount of the award which would result from the application of the Guidelines is rebuttably presumed to be the appropriate amount of child support to be awarded. I.C. Section 32–706A(C).

In 1980, I.C. Section 32–706 was enacted. Idaho Code Section 32–706 provides a nonexclusive set of factors for determining the amount of child support each parent owes. In 1989, I.C. Section 32–706A was added to recognize and give presumptive effect to the I.C.S.G. Idaho Code Section 32–706A states that the I.C.S.G. are to be "advisory, as an aid for the litigants and the courts to evaluate the needs of the children and the resources of the parents in determining the appropriate level of child support." I.C. Section 32–706A(A).

Section 10(c) of the I.C.S.G. provides that the Guidelines Income schedules, contained in Section 10(a) of the I.C.S.G., are not a limitation on the award of child support for combined Guidelines Incomes above $70,000. To calculate support for combined Guidelines Incomes above $70,000, Section 10(c) instructs a two-part analysis: (1) a court should determine the amount of support based on the first $70,000 of Guidelines Income, pursuant to the tables in Section 10(a); and (2) a court should determine any additional support for Guidelines Income above $70,000, by considering all relevant factors, which may include, (a) the financial resources of the child; (b) the financial resources, needs, and obligations of the parents; (c) the standard of living the child enjoyed during the marriage; (d) the physical and emotional condition and needs of the child, including educational needs; (e) any special impairment, limitation, or disability of the child and

any need for special education; (f) any special ability or talent of the child and the cost of educating or training that ability or talent; and (g) any special living conditions that create additional costs for the child. I.C.S.G. Section 10(c). There are no Idaho appellate cases interpreting the factors set forth in Section 10(c) of the I.C.S.G., for purposes of awarding child support above the $70,000 figure.

The formula-driven Guidelines set forth in Section 10(a) of the I.C.S.G. are rebuttably presumed to establish the correct amount of child support. I.C. Section 32–706A. These formula-driven support amounts are premised upon three general assumptions: (1) "the costs of rearing a child are reasonably related to family income, and the proportion of family income allocated to child support remains relatively constant in relation to total household expenditures at all income levels"; (2) in relation to gross income, there is a gradual decline in the proportion of family income allocated to child support, as income increases; and (3) "the Guidelines amount is the appropriate average amount of support during the minority of the child at a given parental income, so that age-specific expenses do not alter the Guidelines amount." I.C.S.G. Section 3.

■ Carla argues on appeal that the magistrate erred by applying a cap rather than an evidence-driven standard in determining whether any additional support above the $70,000 figure should have been awarded. We agree.

The magistrate's September 8, 1994 memorandum decision, incorrectly referenced the combined guidelines income of $70,000 as a "cap figure." The magistrate noted that, "[i]t is agreed by all parties and this Court that the setting of child support *over the cap* of the Idaho Child Support Guidelines is a case of first impression in the State of Idaho." (R., p. 155 (emphasis added).) The magistrate found that while this Court has not given lower courts much guidance in whether child support "should be awarded over the cap figure," (R., p. 155), the Court has indicated that a court must consider all relevant factors. The magistrate concluded those factors may include the seven factors enumerated in Section 10(c) of I.C.S.G. (R., p. 155.)

The magistrate erred in applying the factors listed in Section 10(c) of the I.C.S.G. to the evidence presented in this case. The magistrate improperly used the term "cap" throughout his decision. The magistrate first determined the rebuttably presumed amount of support, and correctly increased Stephen's child support payment from $750 per month to $834.25 per month, the maximum amount of support for two children, under Section 10(a) of the I.C.S.G. The magistrate thereafter erroneously shifted the burden of proof to Carla, requiring Carla to specifically prove the factors set forth in Section 10(c) of the I.C.S.G. The magistrate should have analyzed the income of the parties and the children's requirements in light of the factors set forth in Section 10(c) of the I.C.S.G and awarded such additional child support as was determined in this evaluation. We reverse and remand the magistrate's determination of support above the $70,000 figure.

## V.

### THE MAGISTRATE ERRED IN HOLDING THE CHILDREN'S EXPENSES CANNOT BE ESTABLISHED BY A PRO RATA ESTIMATE TO APPORTION HOUSEHOLD EXPENSES BETWEEN CARLA AND THE CHILDREN

■ Carla argues that the magistrate erred in holding that the calculation of the children's expenses could not be established by a pro-rata estimate. We agree.

The magistrate concluded that "[t]he calculation of the children's expenses [cannot] be established by a pro-rata estimate." Sufficient evidence existed for the court to apportion expenses between Carla and the children. The magistrate was not required only to accept or reject Carla's apportionment.

## VI.

### THE MAGISTRATE MISINTERPRETED CARLA'S EXHIBIT 10 IN FINDING IT UNRELIABLE

Carla argues that the magistrate abused its discretion in finding that certain expenses

in exhibit 10 were unreasonable and unreliable.

The magistrate's finding that the data contained in Exhibit 10 was unreliable was based in large measure on the magistrate's misinterpretation that "the final item before the totals on Exhibit 10, 'misc., mailings' in the amount of $1,068.00. This item is designated as being a cost only of the children. This would equate to approximately 3,662 mailings per year or approximately 10 letters per day every day of the year."

The item on Exhibit 10 is "misc., mailings." The testimony sets forth items contained in the "misc." category in excess of "mailings." The magistrate misinterpreted this category which inappropriately colored the magistrate's view of the entire exhibit. This misinterpretation of Exhibit 10 resulted in an incorrect analysis.

## VII.

### THE MAGISTRATE DID NOT ABUSE ITS DISCRETION IN DENYING ATTORNEY FEES

Carla contends that the magistrate abused its discretion by denying Carla attorney fees below, pursuant to I.C. Section 32–704. Carla argued that she spent all she earned to maintain a middle class lifestyle and that she still had an outstanding student loan of $50,000. Carla asserted that the magistrate failed to consider the disparity of Carla's income in comparison to Stephen's income, in determining whether attorney fees were appropriate, citing to the holding in *Pieper v. Pieper*, 125 Idaho 667, 873 P.2d 921 (Ct.App. 1994).

In *Pieper*, the Idaho Court of Appeals held that a disparity in income was sufficient to support a magistrate's conclusion that the party with the higher income should pay a share of the other party's attorney fees under I.C. Section 32–704. *Id.* at 671, 873 P.2d at 925. However, in *Ireland* the Court stated that, "[s]uch an award is not appropriate where a party has the financial resources necessary to prosecute or defend the action." *Ireland*, 123 Idaho at 960, 855 P.2d at 45 (quoting *Golder v. Golder*, 110 Idaho 57, 61–

62, 714 P.2d 26, 30–31 (1986)); *see also Balderson v. Balderson*, 127 Idaho 48, 54, 896 P.2d 956, 962 (1995) ("In considering Sherry's financial resources, this Court holds that she has sufficient financial resources and declines to enter an order requiring Gerald to pay Sherry's fees.").

The magistrate denied attorney fees stating: "In analyzing the request for attorney's fees, the [magistrate] has reviewed those factors set forth in I.C. Sections 32–704, 32–705 and finds that each party has sufficient property and employment to provide for his or her reasonable needs and therefore each party will be responsible for their respective attorney's fees." Idaho Code Section 32–704(3) states that:

> The court may from time to time after considering the financial resources of both parties and the factors set forth in section 32–705, Idaho Code, order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this act and for attorney's fees. . . .

I.C. Section 32–704(3). In *Noble* we held that in order for an appellate court to uphold a lower court's award of attorney fees pursuant to I.C. Section 32–704, the lower court must have considered and cited factors listed in I.C. Section 32–705 in its decision. *Noble*, 126 Idaho at 891, 894 P.2d at 124; *Smith v. Smith*, 124 Idaho 431, 442, 860 P.2d 634, 645 (1993).

The magistrate's decision in the present case stated that it had reviewed the factors set forth in I.C. Sections 32–704 and 32–705, and found that each party had sufficient property and employment to provide for his or her reasonable needs. The record indicates that Carla had an income of at least $79,000 in 1994 and was going to continue in future years to be making at least $55,000 a year and receive $834.25 in child support every month from Stephen. In addition, Stephen was ordered to pay for all of the children's travel expenses to and from Idaho, Jordan's violin lessons, and 71% of the children's orthodontic expenses. The magistrate did not abuse its discretion in denying Carla attorney fees pursuant to I.C. Section 32–

704. The magistrate's denial of Carla's attorney fees is affirmed.

## VIII.

## CARLA AND STEPHEN ARE NOT ENTITLED TO ATTORNEY FEES ON APPEAL

■ Both Carla and Stephen request attorney fees on appeal. Stephen requests attorney fees under I.C. Section 12–121. The record does not indicate that either party has brought, pursued, or responded to this appeal in an unreasonable or frivolous manner. Accordingly, an award of attorney fees to Stephen on appeal would be inappropriate in this case.

■ Carla requests attorney fees under I.C. Section 32–704. Carla stipulated in her reply brief that the Court could rely on the financial record before the magistrate in determining whether Carla was entitled to attorney fees on appeal. Based upon the above-stated analysis regarding whether Carla was entitled to attorney fees at the magistrate level, Carla is not entitled to attorney fees on appeal, pursuant to I.C. 32–704.

## IX.

## CONCLUSION

The magistrate's modification of the last order modifying the divorce decree is vacated in part and remanded. The magistrate's denial of Carla's attorney fees is affirmed. No attorney fees on appeal. Costs to the appellant.

JOHNSON and SILAK, JJ., concur.

TROUT, J., concurs in result.

SCHROEDER, Justice, concurs in part; dissents in parts IV, V and VI.

## I.

## THE TRIAL COURT DID NOT APPLY A CAP.

The Court holds that the trial court erred by applying a cap rather than an evidence-driven standard in determining whether any additional support above the $70,000 figure should have been awarded. While the trial court used the term "cap," the record indicates the trial court in fact considered the relevant factors set forth in I.C.S.G. Section 10(c). The trial court rejected as inapplicable four of the seven factors, finding that the children had no independent financial resources; the standard of living the children enjoyed during the marriage was about the same as their present standard; neither child had a special impairment, limitation, disability or need for special education; and, the children did not have any special living condition needs that would require additional costs. The record supports these findings.

The trial court next considered the financial resources and obligations of Carla and Stephen, based upon each party's exhibits indicating their monthly expenses. I.C.S.G. Section 10(c)(2). The trial court found that Stephen had a sufficient amount of disposable income to cover the needs of the children found to be lacking after an analysis of Carla's income and expenses. The record supports, and the appellant did not challenge, the trial court's finding.

Carla's exhibit 10 and testimony regarding exhibit 10 was the focus of the trial court's inquiry as to whether the physical and emotional condition and needs of the children required additional support. I.C.S.G Section 10(c)(4). The trial court found that some of the expenses represented in Carla's exhibit 10 were unreasonable. The trial court cited the following problems: (1) Carla's representation that she could live on only $944 per month if the children were not living with her; (2) the appearance that Carla was interpreting an increase in child support over the $70,000 figure as a substitute for alimony and ex-spouse maintenance; (3) the fact that Carla spent $433 a month on clothes for the children; (4) the fact that some of the items listed in exhibit 10 were either exaggerations of actual costs or expenses or, if they were accurate, that they were so unreasonable that the trial court would not accept them; and (5) some of the items in exhibit 10 should not have been included (e.g., travel, because Stephen had agreed to pay for travel ex-

penses) or were substantially over-estimated (e.g., school meal tickets were overestimated by $450, child care was over-estimated by $2,467, and "misc., mailings" would equate to about 3,682 mailings per year[3]). In addition the trial court found that there was no evidence indicating that additional support was needed for the educational needs of the children.

The trial court applied the evidence offered by Carla to the factors set forth in the I.C.S.G. Section 10(c)(4). The appellants did not challenge the trial court's finding that the child care costs were overstated in exhibit 10 by $2,467 per year or that Stephen had agreed to pay travel expenses, eliminating $1,020 of expenses from exhibit 10's budget. There was no testimony indicating that the children had any physical or emotional conditions that required additional support, except for Carla's testimony regarding the sudden and predicted continuing physical growth of the children. Carla did not provide any firm dollar amounts as to the continuing costs of the children's physical growth, and the trial court correctly refused to speculate as to an appropriate amount for such future physical growth.

While the trial court concluded that it could not rely upon the figures that it found to be unreasonable and/or incorrect as grounds for awarding additional support, the trial court did rely upon the amount in exhibit 10 for Jordan's violin lessons. Jordan has a special talent and ability for playing the violin. The evidence supports the expense in exhibit 10 for violin lessons, which the trial court properly awarded as additional support pursuant to I.C.S.G. Section 10(c)(6).

Carla's assertion that Stephen should be required to provide a lifestyle comparable to his own is not supported by the present language in I.C.S.G. Section 10(c)(3). Section 10(c)(3) provides that in determining any additional support for Guidelines Income above $70,000, the court shall consider all relevant factors, which may include, "[t]he standard of living the child enjoyed *during the marriage*." I.C.S.G. Section 10(c)(3) (emphasis added). The trial court found that the

standard of living the children enjoyed during the marriage was approximately the same as their current standard. The trial court did not err in the determination that under the current version of I.C.S.G. Section 10(c)(3) Stephen was not required to provide the children with his current high income class standard of living.

The trial court's use of the term "cap" in the decision was inappropriate. However, the .trial court actually applied the factors listed in Section 10(c) of the I.C.S.G. to the evidence presented. The trial court did not in fact impose a cap on support above the $70,000 Guidelines. The expense for Jordan's violin lessons was a proper expense to award as additional support pursuant to Section 10(c)(6) of the I.C.S.G., but Carla failed to provide other credible evidence indicating that the children had needs that would require additional support from Stephen.

The Court has hinged its decision on the use of the term "cap" in the trial court's decision, although a cap was not in fact imposed. It is clear that had there been credible evidence to support an additional award it would have been allowed.

## II.

## THE TRIAL COURT DID NOT ERR IN FAILING TO APPORTION HOUSEHOLD EXPENSES BETWEEN CARLA AND THE CHILDREN.

The Court holds that the trial court erred in holding that the calculation of the children's expenses could not be established by a pro-rata estimate.

The trial court found that expenses such as rent, utilities, child care, and entertainment, were "unreasonable and unbelievable estimates on what the mother's actual expenses [were] as compared to the children's" and concluded that "[t]he calculation of the children's expenses [could not] be established by a pro-rata estimate," based on the evidence presented. The trial court did not hold that expenses can never be apportioned between parents and children but that the evidence

---

**3.** The trial court may have misinterpreted the term "misc., mailings" in exhibit 10 in that the trial court did not consider that the term could have included items other than mailings.

did not support an apportionment of expenses in this case.

Apportionment of expenses between a custodial parent and a child is permissible, but the trial court's conclusion that an apportionment in the present case would not be appropriate is supported by substantial and competent evidence.

### III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN FINDING CARLA'S EXHIBIT 10 WAS IN PART UNREASONABLE.

The Court holds that the trial court abused its discretion in finding that certain expenses in exhibit 10 were unreasonable and unreliable. As the appellant, Carla has the burden of proving that by rejecting certain expenses as unreasonable in exhibit 10, the trial court committed prejudicial error. *Burgess v. Salmon River Canal Co.*, 119 Idaho 299, 306, 805 P.2d 1223, 1230 (1991). Idaho Rule of Civil Procedure 61 states that any error in a proceeding must be disregarded if such error does not affect the substantial rights of the parties.

The trial court closely examined the items and amounts listed in exhibit 10 and concluded that some of the amounts were exaggerated or, in the alternative, the amounts were unreasonable. The cross examination of Carla supported the finding that some of the amounts were exaggerated, improperly included as a monthly expense, or could be viewed as being unreasonable. Although some of the trial court's criticism of exhibit 10 was not supported by the record (e.g., the interpretation of "misc., mailings"), Carla has failed to satisfy her burden of proving that the trial court's finding that certain expenses in exhibit 10 were unreasonable and unreliable constituted prejudicial error. *Burgess*, 119 Idaho at 306, 805 P.2d at 1230.

### IV.

### CONCLUSION.

If the trial court had in fact applied a cap, and if there were credible evidence to support an additional award of child support, the Court's opinion would follow. But a cap was not imposed, and the trial court determined that there was insufficient credible evidence to justify an additional award beyond that allowed. This case reduces itself to factual issues that should have been left to the trial court.