75 P.3d 176

**Kim WEILAND, Plaintiff–Appellant,**

v.

**Eric RUPPEL, Defendant–Respondent.**

No. 27840.

Supreme Court of Idaho,
Boise, February 2003 Term.

April 30, 2003.

Rehearing Denied Aug. 14, 2003.

Bauer & French, Boise, for appellant. Charles B. Bauer argued.

Shepard Law Offices, PLLC, Boise, for respondent. Ann K. Shepard argued.

SCHROEDER, Justice.

Kim Weiland (Weiland) asks this Court to reverse a custody decree in a filiation order which awarded her primary custody over her four-year-old son on the condition that she not leave Idaho. Eric Ruppel (Ruppel) is the child's father. It is Weiland's desire to move to Oregon with their son, contrary to the limitation imposed in the custody order.

## I.

## BACKGROUND

Weiland and Ruppel were married in 1995. Ruppel lived in Idaho. Weiland was residing in Oregon with her four children from three previous relationships. She had one child with her first husband and a second child from a relationship following her divorce. She married a second time. The parental rights to her second child were terminated so her second husband could adopt the child. She and her second husband eventually divorced. She married a third time and had two more children from that marriage. That relationship terminated in divorce in 1995, and she moved to Idaho to be with Ruppel.

Weiland and Ruppel divorced in 1997, but they resumed their relationship soon after and the child in issue was born in 1998. That year Weiland enrolled in court reporter school in Idaho to improve her earning ability. The reconciliation between Weiland and Ruppel failed. Weiland filed a Petition for Filiation. Ruppel answered and the case proceeded to trial. Ruppel is the father of the child. The issue in this case arises from the custody order.

Weiland revealed that she wanted to move to Oregon because her parents and some of

the other children's fathers live there. Additionally, she believes court reporters can earn more in Oregon than in Idaho. Weiland is not on good terms with Ruppel's family, and she owns real property in Oregon. Aside from the dispute about moving to Oregon, Weiland acknowledges Ruppel's connection with the child.

Ruppel recognized and accepted Weiland as the primary caretaker of their child and only challenged her desire to take the child out of Idaho, maintaining that this would put a prohibitive strain on his ability to see and interact with his son. Ruppel is an apprentice electrician, earning $9 an hour. Also, Ruppel stated his concern about Weiland's conduct in the past in which she married and divorced several times, eventually moving her other children away from their fathers, effectively ending their relationship with their children. Ruppel expressed concern that Weiland would not actively promote his relationship with his son. Consequently, he feels the need for some degree of proximity to maintain his parental relationship.

After a failed attempt at mediation, the trial court appointed Dr. Robert Engle, a clinical psychologist, to conduct a comprehensive parenting evaluation. Dr. Engle testified that Weiland should be the primary custodian of the child given that the child is bonded with his siblings and the stable environment Weiland supplies. But he also testified that it would not be in the best interests of the child to be moved out of the State and to be away from his father. Lack of continuous contact with both parents can effect cognitive abilities and lead to gender identification issues and self-consciousness, he testified. Dr. Engle surmised that a visiting schedule sufficient to maintain the type of contact with Ruppel required for the child's age would not be possible if Weiland moved to Oregon. Her desire to move, Dr. Engle opined, was to improve her own quality of life and not in consideration of Ruppel's needs and in conflict with the child's best interests. He recommended that continuing the current schedule of visitation was in the child's best interest, which consisted of Ruppel visiting the child four times a week with some overnight visits.

The trial court entered an order of filiation under Idaho Code section 7–1120 identifying Ruppel as the child's father, and the court proceeded to enter a support and custody order pursuant to I.C. § 7–1102. The court noted that no specific criteria for granting a custody order between non-married parents, other than "what is in the best interests of the child," has been statutorily identified, but that this Court has applied the factors from I.C. § 32–717 concerning custody determinations in divorce proceedings. These factors include the wishes of the parents as to custody, the wishes of the child, the relationship between the child and his parents and/or siblings, the child's adjustment to home, community and school, the mental and physical integrity of the child and parents, the need to promote continuity and stability, and any domestic violence around or toward the child. *See* I.C. § 32–717. The trial court noted Weiland's desire to move as another factor in his determination. In light of *Ziegler v. Ziegler*, 107 Idaho 527, 691 P.2d 773 (Ct.App. 1985), the court decided Weiland's right to travel was countered by the State's compelling interest in the health and welfare of the child and that the court could impose restrictions on her as long as they were reasonable. The court adopted the findings of Dr. Engle and found that a move to Oregon was not in the child's best interest. The trial court ruled that Weiland's custody of the child was dependant on her adhering to a visitation schedule that placed the child in Idaho. Any deviation from the schedule would not automatically result in Ruppel gaining custody but would result in contempt proceedings.

Weiland appealed the custody order to this Court, which granted permissive appeal from the magistrate division of the district court.

## II.

## ISSUES AND STANDARD OF REVIEW

Weiland's appeal raises the following issues:

**A. Did the trial court proceed properly under I.C. § 32–717 and weigh all the factors in determining what was in the best interest of the child?**

**B. Is the custody order that prevents Weiland from leaving Idaho in the best interests of the child?**

**C. Does the trial court's decision to order Weiland to stay in Idaho intrude upon legislative prerogative to set the criteria under which such an order may be granted?**

**D. Does the trial court's order violate Weiland's fundamental right to travel?**

In *Jensen v. Jensen*, 128 Idaho 600, 602, 917 P.2d 757, 759 (1996) this Court stated that:

> When reviewing decisions of a magistrate, the Court will uphold the magistrate's findings of fact if they are supported by substantial and competent evidence. *Ireland v. Ireland*, 123 Idaho 955, 958, 855 P.2d 40, 43 (1993). The Court exercises free review over questions of law. *Downey Chiropractic Clinic v. Nampa Restaurant Corp.*, 127 Idaho 283, 285, 900 P.2d 191, 193 (1995). This Court is not bound by the legal conclusions of the magistrate, and is free to draw its own conclusions from the facts presented. *Kootenai Elec. Coop., Inc. v. Washington Water Power Co.*, 127 Idaho 432, 435, 901 P.2d 1333, 1336 (1995); *Cluff v. Bonner County*, 126 Idaho 950, 952, 895 P.2d 551, 553 (1995).

## III.

**THE TRIAL COURT CONSIDERED RELEVANT FACTORS AND THE DECISION IS SUPPORTED BY SUBSTANTIAL, COMPETENT EVIDENCE**

■ The trial court's decision does not reflect an error in its findings and in the custody order. The trial judge reviewed each element cited in I.C. § 32–717, listing and weighing the relevant facts. The trial court found two factors concerning the wishes of the parents and of the child were to be less factually relevant since the parent's were at odds and the child was too young to express a preference. There was no record of domestic violence, negating that factor, and the parents mental and physical health was found by Dr. Engle to be sound and of no concern to the proceedings. The trial court found any concern for the child's adjustment to his home or community was minimal given his age and tended to favor staying in Idaho inasmuch as any move is disruptive. The trial court emphasized factor three: the interaction and interrelationship of the child with his or her parents. *See* I.C. § 32–717(A)(3). The trial court stated the problem:

> This is one of the most significant factors in the instant case. Clearly, [the child] is primarily attached or bonded with his mother and she has been his primary caretaker since birth. The evidence is clear that it would be in [the child's] best interest for her to continue in the role as primary caretaker. However, as Dr. Engle observed, [the child] is also bonded and attached with his father, albeit perhaps to a lesser extent, and obtains additional benefits from that relationship which differ from that his mother provides. [The child] will clearly benefit from continuing to have frequent and continuous quality contact with his father, especially at this age and the few years which follow while he is going through his early developmental stages.

> It is in connection with this factor that Kim's desire to relocate became a significant consideration. While the court does not question her right to make personal choices with her own life such as where she will live or work, it does appear that she may not be considering the impact those choices might have on her children, or in this case, upon [the child]. The court finds it incongruous that she would mention as a positive aspect of the move, the fact that her other two children would be closer to their father if she lived in Portland, apparently recognizing this would foster more contact and be in their best interest, while at the same time being unable to see the impact such a move would have on [the child's] relationship with his father.

The trial court listed in detail the benefits Weiland would incur by living in Oregon, how they would improve the child's life, and weighed them against what Dr. Engle explained were the important developmental

gains to be had from having a close father figure for a child the age of this child, i.e. the cognitive and gender orientation issues. The trial court discussed how the gains cited by Weiland were clearly outweighed by the benefits the child derived from being close to his father. It found that if Weiland moved, she would still have to finish court reporting school, which she could do more easily in Idaho, since in Oregon she would have to take night classes. Citing wage statistics, the court further found that Weiland's increased earnings in Oregon would be offset by the high cost of living, and found that there were plenty of court reporting jobs in Idaho. The suggestion Weiland could receive the help of her mother in caring for the children in Oregon was found to be suspect given the mother lives three hours away from Portland. Additionally, the grandparents have traveled often to Boise without trouble, suggesting a move would not significantly improve their contact with the children. The trial court concluded that "the adverse impact upon [the child's] relationship with his father will outweigh any potential benefits he might receive by virtue of his mother's relocation to Portland." The trial court's conclusion that it is in the best interests of the child to stay in Idaho has a substantial, rational basis in the facts.

Weiland relies on several Idaho cases in which this Court or the Court of Appeals allowed a parent to move away from Idaho with the children. *See Osteraas v. Osteraas,* 124 Idaho 350, 859 P.2d 948 (1993); *Biggers v. Biggers,* 103 Idaho 550, 650 P.2d 692 (1982); *Koester v. Koester,* 99 Idaho 654, 586 P.2d 1370 (1978); *Peterson v. Peterson,* 77 Idaho 89, 288 P.2d 645 (1955); *Milliron v. Milliron,* 116 Idaho 253, 775 P.2d 145 (Ct. App.1989). However, an underlying principle in each of these cases is that appellate courts will affirm the findings of trial courts if they are supported by the evidence. In *Ziegler v. Ziegler,* 107 Idaho 527, 691 P.2d 773 (Ct.App.1985), custody was awarded to the mother subject to specific visitation rights for the father. *Id.* at 531, 691 P.2d at 777. The mother evinced a desire to move to Georgia to be with her family, but the Court of Appeals upheld the lower court's order that prevented either parent from going 100 miles outside of Coeur d'Alene, Idaho, without the court's permission. *Id.* The Court of Appeals agreed with the lower court that such an order was proper for the best interests of the children. The result depends upon the facts. In this case the trial court weighed the relevant factors and supported its conclusion with facts shown by the evidence. There was no infringement upon legislative prerogative or disregard of relevant factors.

## IV.

### WEILAND'S RIGHT TO TRAVEL WAS NOT INFRINGED

Weiland argues that the custody order violates her right to travel because it is excessive in its restriction in that the benefit the child would derive from staying near his father is less than the infringement on Weiland's liberty.

■ In *Ziegler,* the Court of Appeals addressed restrictions on the right to travel and decided in favor of the ability of the State to place restrictions on travel. The right to travel was identified as fundamental. *Id. See also Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), overruled in part by *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, the State interest in restricting a custodial parent was declared compelling when invoked for the best interests of the child. *Ziegler,* 107 Idaho at 534, 691 P.2d at 780. The court reasoned that the right to travel was only limited by the desire of the parent to retain her status as the custodial parent and that in all custody proceedings a parent may be forced to forgo some rights consistent with the best interests of the child. *Id.* The trial court weighed Weiland's right to travel against the child's interest in having a continuing relationship with his father. The interest of the child prevailed. There was no improper infringement upon the right to travel.

## V.

### ATTORNEY FEES

Ruppel claims attorney fees under I.A.R. 41(a) on the grounds that the case was with-

**126**

out merit and brought frivolously.. No statutory authority is cited. No attorney fees are allowed.

## VI.

### CONCLUSION

The trial court's decision is affirmed. Ruppel is awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices WALTERS and EISMANN concur.

Justice KIDWELL, Dissenting.

The best interest of a child is obviously a critical factor in determining whether a custodial parent may relocate. It should not, however, be the only factor considered by a court making such a decision. Thus, I would find that the trial court erred by determining whether Ms. Weiland could move based solely on application of the best interest of the child test (BIOC test) found in I.C. § 32–717(1). Therefore, I respectfully dissent.

Section 32–717(1) states in part:

In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors. . . .

As I stated in *Roberts v. Roberts*:

basing a decision about a custodial parent's right to relocate solely on the BIOC test overshadows and essentially eliminates consideration of the custodial parent's protected liberty interests in choosing where to live, work, and raise children. Thus, determining where a custodial parent may live, work, and parent solely based on the BIOC test constitutes an unnecessary and improper interference with the interests of custodial parents, not a "necessary and proper" direction "in the best interest of the children." I.C. § 32–717.

138 Idaho 401, 407, 64 P.3d 327, 333 (2003) (Kidwell, J., dissenting). I would hold that custodial parents have a presumptive right to relocate that may be rebutted if the court found that the move would substantially derogate the best interest. of the child or if the purpose of the move were shown to be interference with the non-custodial parent's rights. *Id.* This rule would enable courts to account for the best interests of the child without unnecessarily and improperly interfering with the lives of custodial parents. Because the court applied the incorrect standard in determining whether Ms. Weiland could move, I would vacate the trial court's order and remand this case for further proceedings.