# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35091

| | | |
|---|---|---|
| PATRICK A. BARTOSZ, | ) | |
| | ) | Boise, September 2008 Term |
| Plaintiff-Respondent, | ) | |
| | ) | 2008 Opinion No. 115 |
| v. | ) | |
| | ) | Filed: October 16, 2008 |
| JULIE JONES, fka JULIE GOODMAN, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Bradley S. Ford, Magistrate Judge.

Order on child custody is <u>affirmed</u>.

Bauer & French, Boise, for appellant. Charles B. Bauer argued.

Tucker Law Office, Nampa, for respondent. Courtnie R. Tucker argued.

_____

J. JONES, Justice

Julie Jones appeals the trial court's denial of her petition to modify a child custody order to permit her to move her daughter to Hawaii. We affirm.

## I.

Patrick Bartosz and Julie Jones met in 1989 when Patrick was visiting his family in Idaho. At the time, Patrick lived in California and was working as a marine technician. Julie was living in Boise and raising two children from a previous relationship. In 1990, Julie decided to move to California to live with Patrick. While there, Julie focused on raising the children and Patrick served as the family's primary source of income. Patrick and Julie never married, but did have a child together. Their daughter, Sydney, was nearly ten years old at the time of the hearing in this matter.

1

Eventually, Patrick and Julie ended up back in Idaho. The couple permanently separated in 2001 and began an informal custody arrangement. Then, in 2004, Patrick discovered that Julie had moved to Hawaii with Sydney, which prompted him to file a petition seeking primary physical custody. The magistrate judge denied Patrick's petition but ordered Julie to return Sydney to Idaho. The judge awarded Patrick and Julie joint legal and physical custody of Sydney, with Julie having primary physical custody. He also prohibited either parent from moving Sydney's residence outside of Ada or Canyon Counties without giving sixty days' notice.

In May 2006, Patrick learned that Julie wanted to move back to Hawaii with Sydney so he filed a petition to modify the original custody order, again asking the court to award him primary physical custody. Julie wanted to move back to Hawaii because her new husband, David Jones, an officer in the U.S. Army, had been transferred there. Julie filed an answer and counterpetition requesting that the court modify the initial custody order to permit her to move to Hawaii with Sydney.

The trial court ordered a home study evaluation, which was conducted by Dr. Joe Lipetzky. Dr. Lipetzky recommended that Julie be permitted to move to Hawaii with Sydney and that the parties continue to share joint legal and physical custody, with Patrick having extended visitation during Sydney's school breaks. Dr. Lipetzky based his opinion on his observations that Julie had been Sydney's primary caregiver since birth, Sydney wanted to move to Hawaii with her mother, Julie was likely to comply with court-ordered visitation, and Sydney would likely be able to maintain a close relationship with her father.

Although the magistrate judge considered Dr. Lipetzky's report, he concluded that it would not be in Sydney's best interest to relocate with her mother to Hawaii and, therefore, denied Julie's petition to modify the custody order. The judge granted Julie primary physical custody of Sydney as long as she remains in Idaho and Patrick primary physical custody if Julie moves to Hawaii. Julie sought and obtained permission to pursue a direct appeal to this Court pursuant to Idaho Appellate Rule 12.1.

**II.**

On appeal, we are presented with three issues: (1) whether the magistrate abused his discretion by denying Julie's request to modify the custody order; (2) whether the custody order

2

prohibiting Julie from moving to Hawaii with Sydney violates Julie's right to travel; and (3) whether Patrick is entitled to attorney fees.

**A.**
**Standard of Review**

Child custody determinations are committed to the sound discretion of the magistrate judge. *McGriff v. McGriff*, 140 Idaho 642, 645, 99 P.3d 111, 114 (2004). On appeal, this Court will only overturn the magistrate's decision for an abuse of discretion. *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003).

**B.**
**The Magistrate Did Not Abuse His Discretion by Denying Julie's Request to Modify the Custody Order**

Julie bases her argument that the magistrate's decision was an abuse of discretion on three grounds: (1) the magistrate failed to consider factors relevant to whether a custodial parent should be allowed to move with a child; (2) the magistrate applied a presumption against the physical separation of a child and a non-custodial parent; and (3) the magistrate made several findings and conclusions that were not supported by the evidence.

**1.**
**The Magistrate Considered Factors Relevant to Whether a Custodial Parent Should be Permitted to Relocate With a Child**

Julie argues that the magistrate failed to consider factors that are relevant to determining whether a custodial parent should be able to relocate with a child. She maintains that the factors outlined in Idaho Code section 32-717 provide insufficient guidance for trial courts deciding relocation cases, which results in an "incomplete consideration of the evidence" and causes courts to apply a presumption against relocation.

In Idaho, the child's best interest is of paramount importance in child custody decisions. *Hoskinson v. Hoskinson*, 139 Idaho 448, 455, 80 P.3d 1049, 1056 (2003). Accordingly, the best interest standard governs decisions regarding where a child will reside. *Roberts*, 138 Idaho at 404-05, 64 P.3d at 330-31; *see also Weiland v. Ruppel*, 139 Idaho 122, 124-25, 75 P.3d 176, 178-79 (2003). The standard is set forth in Idaho Code section 32-717, which provides that a "court may, before and after judgment, give such direction for the custody, care and education of

3

the children . . . as may seem necessary or proper in the best interests of the children."[1] I.C. § 32-717(1). The statute gives trial courts wide discretion in making custody determinations, but it requires them to consider all relevant factors when evaluating the best interest of the child. *Id.*; *see also Hoskinson*, 139 Idaho at 455, 80 P.3d at 1056. Relevant factors may include the parents' wishes for the child's custody; the child's wishes; the interrelationship and interaction of the child with his or her parents and siblings; the extent the child has adjusted to his or her school, home, and community; the circumstances and character of the persons involved; the need to promote continuity and stability in the child's life; and domestic violence. I.C. § 32-717(1)(a)-(g). This list of factors is not exhaustive or mandatory and courts are free to consider other factors that may be relevant. *Nelson v. Nelson*, 144 Idaho 710, 715, 170 P.3d 375, 380 (2007). Courts must, however, take into account Idaho's presumption that it is in the child's best interest to maintain frequent and continuing contact with both parents, unless one parent is an habitual perpetrator of domestic violence. I.C. § 32-717B. *Id. See also,* §§ 32-1007, 18-4506; *Hopper v. Hopper*, 144 Idaho 624, 627, 167 P.3d 761, 764 (2007).

When a move would violate an existing custody arrangement, the parent seeking permission to relocate with the child has the burden of proving that the relocation is in the best interest of the child. *Roberts*, 138 Idaho at 405, 64 P.3d at 331. The factors enumerated in section 32-717 provide guidance in determining whether relocating is in a child's best interest. *Id.* at 404, 64 P.3d at 330; *see also Weiland*, 139 Idaho at 124-25, 75 P.3d at 178-79. In *Roberts*, a custody agreement provided that the mother would have primary physical custody of the children, but restricted her residence to Cassia and Minidoka Counties. *Roberts*, 138 Idaho at 403, 64 P.3d at 329. The mother later petitioned to have the decree modified to permit her to relocate with the children to Ada County. *Id.* The magistrate denied the mother's petition to relocate and ordered that custody would be transferred to the children's father if she moved. *Id.* In upholding the magistrate's decision, we noted that the factors enumerated in section 32-717 have relevance in determining whether the children could relocate with their mother. *Id.* at 404, 64 P.3d at 330. Because the trial court considered the section 32-717 factors relating to the best interests of the children, its denial of the petition to relocate was not an abuse of discretion. *Id.*

---

[1] By its terms, section 32-717 only applies to actions for divorce and to "children of the marriage," however, because no specific criteria govern custody orders for non-marital children, we have approved application of section 32-717 to situations where a child's parents are not, or have not been, married. *See Weiland*, 139 Idaho at 123, 75 P.3d at 177; *State v. Hart*, 142 Idaho 721, 723, 725, 132 P.3d 1249, 1251, 1253 (2006).

4

Courts may consider factors not enumerated in section 32-717 when deciding whether to permit a relocation. In *Roberts*, the magistrate also considered factors used by California and New York courts to determine whether the relocation was in the best interests of the children. *Roberts*, 138 Idaho at 405, 64 P.3d at 331. The factors included the extent of the child's contact with his or her parents; the parents' motives for relocating or opposing relocation; the impact the move would have on the child's relationship with the noncustodial parent and extended family; and the extent the move would enhance the economic, emotional, and educational well-being of the custodial parent and the child. *See In re Marriage of Burgess*, 913 P.2d 473, 483 (Cal. 1996); *Matter of Tropea v. Tropea*, 665 N.E.2d 145, 151 (N.Y. 1996). On appeal, we upheld the magistrate's consideration of such factors to guide his decision. *Roberts*, 138 Idaho at 405, 64 P.3d at 331. We reasoned that "[b]ecause there is virtually no Idaho law directly on point" the trial court did not err in considering California and New York law in reaching its conclusion.[2] *Id.*

According to Julie, the "bare terms of Idaho Code [s]ection 32-717" provide insufficient guidance for trial courts making relocation decisions and "the articulation of standards in relocation cases is appropriate and needed in Idaho." In making her argument, she relies on scholarly articles and cases, most of which support a presumption in favor of relocation.[3] Julie does not propose a specific standard but, in light of the authorities she relies on, it appears that she is asking us to adopt a presumption that it is in a child's best interest to relocate with the custodial parent. This position is contrary to Idaho law, which requires the moving parent to prove that relocation is in the child's best interest. *Roberts*, 138 Idaho at 405, 64 P.3d at 331.

The only other authority Julie relies on in arguing for a more definite standard is a Florida Supreme Court case, which held that a custodial parent who has good faith reasons for relocating

---

[2] However, we rejected the approach taken in *Burgess* and *Tropea*, which placed the burden on the non-custodial parent to show why relocation should not be allowed. *Roberts*, 138 Idaho at 405, 64 P.3d at 331.
[3] One of the articles concludes that a custodial "parent should be able to relocate with the child, except in unusual circumstances" and that usually "the child's best interests will favor the move." *See* Judith S. Wallerstein & Tony J. Tanke, *To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce*, 30 FAM. L.Q. 305, 318 (1996). Similarly, another article argues that it is in a child's best interest to relocate with the primary caregiver. *See* Carol S. Bruch, *Sound Research or Wishful Thinking in Child Custody Cases? Lessons from Relocation Law*, 40 FAM. L.Q. 281, 314 (2006). The Oklahoma case Julie cites also recognized a custodial parent's presumptive right to relocate with the child. *Kaiser v. Kaiser*, 23 P.3d 278, 282, 287 (Okla. 2001). The decision was based on an Oklahoma statute that entitled a parent with custody of a child to relocate unless it would "prejudice the rights or welfare of the child." *Id.* at 282; *see also* OKLA. STAT. title 10, § 19 (1991). Because there is no statute in Idaho creating a presumption in favor of relocation, this case is unpersuasive.

should ordinarily be permitted to move. *Mize v. Mize*, 621 So.2d 417, 419 (Fla. 1993). The court in that case noted, however, that trial courts should still consider factors such as the extent the move will improve the quality of life of the parent and child; the motive for the move; the extent alternative visitation arrangements will be followed; the extent substitute visitation will enable a continuing relationship between the child and the other parent; the costs of transportation; and the best interest of the child.[4] *Id.* at 419-20.

Although Julie does not specifically advocate that this Court adopt the Florida Supreme Court's approach in *Mize*, she asks us to pronounce a similar set of move-related factors for trial courts to consider when deciding relocation cases. As discussed above, this Court has approved of trial courts considering move-related factors in addition to the factors set forth in section 32-717. *See Roberts*, 138 Idaho at 405, 64 P.3d at 331. Since a trial court may already consider factors such as those recognized by the Florida Supreme Court, it would not be particularly helpful for this Court to enunciate a laundry list of factors that could or should be considered in this type of case. Factors relevant in some relocation cases may be irrelevant in others and, under the current framework, trial courts are free to consider factors unique to each case.

In any event, the magistrate in this case considered move-related factors in making his decision. In addition to considering the section 32-717 factors, the magistrate considered Julie's motive for the move, the extent alternative visitation would allow Sydney and Patrick to maintain a close relationship, the impact of the move on Sydney's visitation with Patrick, and the effect of the move on Sydney's relationship with her extended family. Only after considering all of these factors did the magistrate conclude that it would not be in Sydney's best interest to move to Hawaii. Accordingly, the magistrate did not err by failing to consider factors relevant to relocation.

**2.**
**The Magistrate Did Not Apply an Irrebuttable Presumption Against the Physical Separation of a Child and a Non-Custodial Parent**

Julie argues that this Court's cases have created a virtual presumption against relocation. She also argues that the magistrate erred by applying an irrebuttable presumption against the

---

[4] At the time *Mize* was decided, Florida had a statute similar to Idaho Code section 32-717B that established a presumption that parents should share custody of their children and that children should have "frequent and continuing contact" with both parents. *See* FLA. STAT. § 61.13(2)(b) (1989).

6

physical separation of a child and a non-custodial parent. Finally, she argues that the magistrate abused his discretion by overemphasizing her motive for moving.

**a.**
**Idaho Law Does Not Impose a Presumption Against Relocation**

Under Idaho law, unless one parent is a habitual perpetrator of domestic violence, it is presumed that an award of joint custody serves a child's best interest.[5] I.C. § 32-717B(1), (4) & (5). A court may award parents joint physical custody, joint legal custody, or both. *Id.* § 32-717B(1). An award of joint physical custody must assure that the child has "frequent and continuing contact with both parents," but this "does not necessarily mean the child's time with each parent should be exactly the same in length nor does it necessarily mean the child should be alternating back and forth over certain periods of time between each parent." I.C. § 32-717B(2). We have recognized that:

> [i]t is not unusual for the courts of Idaho to grant one parent the right to have child custody for one or two months during the year while the other parent is given custody for the remaining months of the year . . . where the welfare and best interest of the child require this.

*Koester v. Koester*, 99 Idaho 654, 657, 586 P.2d 1370, 1373 (1978) (quoting *Nielsen v. Nielsen*, 87 Idaho 578, 582, 394 P.2d 625, 626-27 (1964)) (internal citations omitted); *see also State v. Hart*, 142 Idaho 721, 725-26, 132 P.3d 1249, 1253-54 (2006) (noting that "this Court has upheld court decisions giving primary custody to one parent during the school year and directing a different schedule during the summer months"); *King v. King*, 137 Idaho 438, 445, 50 P.3d 453, 460 (2002) (upholding magistrate's decision to grant father eighty percent physical custody and mother twenty percent physical custody). It is the province of the trial court to determine the amount of time the child spends with each parent. I.C. § 32-717B(2).

The presumption in favor of joint custody is not equivalent to a presumption against a custodial parent relocating with a child. As discussed above, the best interest of the child standard governs relocation decisions. *See Roberts*, 138 Idaho at 404, 64 P.3d at 330; *see also Ford v. Ford*, 108 Idaho 443, 445, 700 P.2d 65, 67 (1985). Once the parent seeking permission to relocate proves that relocation is in the child's best interest, he or she will be allowed to move with the child. *Roberts*, 138 Idaho at 405, 64 P.3d at 331.

---

[5] The presumption may be overcome by a preponderance of the evidence. I.C. § 32-717B(4).

7

Nonetheless, Julie argues that this Court's cases have created a "strong presumption against any relocation." She refers specifically to *Roberts*, *Hopper v. Hopper*, 144 Idaho 624, 167 P.3d 761 (2007), *Navarro v. Yonkers*, 144 Idaho 882, 173 P.3d 1141 (2007), and *Schultz v. Schultz*, 145 Idaho 859, 187 P.3d 1234 (2008). Julie's characterization of the law in Idaho is incorrect. As discussed above, *Roberts* does not apply a presumption against relocation, it only requires that the parent seeking to relocate with the child prove that the move is in the child's best interest. *Roberts*, 138 Idaho at 405, 64 P.3d at 331.

Similarly, none of the other cases Julie cites create a presumption against relocation. Only one case she relies on actually required a child to remain in Idaho. In *Hopper*, a mother secretly moved to Montana with her son and obtained a fraudulent domestic violence protection order against the father. *Hopper*, 144 Idaho at 625, 167 P.3d at 762. The father subsequently filed a motion for temporary custody, which the magistrate denied. *Id.* Instead, the magistrate awarded temporary custody to the mother and permitted her to stay in Montana with the child. *Id.* On appeal, we held that the magistrate erred by failing to require the mother to return the child to Idaho during the custody proceedings. *Id.* at 627, 167 P.3d at 764. We reasoned that the mother should not receive the evidentiary benefits associated with having custody of the child and thereby be rewarded for her unlawful conduct. *Id.* We remanded the case so that it could be "decided with the underlying legal and social principle that it is [in] the best interests of a child to have a continuing relationship with both parents." *Id.*

The other cases Julie cites indicate that a parent's move is only one factor for courts to consider when making custody determinations. In *Navarro*, a mother moved to Nevada with her child without informing the child's father, after which the father filed a petition for custody. *Navarro*, 144 Idaho at 884, 173 P.3d at 1143. We upheld the magistrate's decision to treat the mother's unilateral move with the child as a factor relating to the child's best interest rather than as a determinative condition that foreclosed an award of custody to the mother. *Id.* at 888, 173 P.3d at 1147. In reaching our decision, we distinguished *Hopper* on the grounds that the mother's move in that case prevented the father from establishing a relationship with the child. *Id.* In *Schultz*, a mother fled to Oregon with her child after being physically abused by the child's father. *Schultz*, 145 Idaho at 861, 187 P.3d at 1236. The father later filed for divorce and the magistrate, relying on *Hopper*, ordered the mother to return the child to Idaho. *Id.* On appeal, we reversed the trial court after concluding that the court abused its discretion by failing

8

to consider the best interest of the child and to elaborate the basis for its decision. *Id.* at 862-63, 187 P.3d at 1237-38. We explained that *Hopper* did not remove a magistrate's discretion in making child custody determinations and that the best interest of the child remains paramount in deciding whether a parent must return a child to Idaho. *Id.* at 866, 187 P.3d at 1241. The fact that a custodial parent relocates outside of Idaho with a child is only one factor to consider when deciding what is in the child's best interest. *Id.* at 865, 187 P.3d at 1240.

These cases make clear that Idaho law does not impose a presumption against relocation. On the contrary, when considered together, they stand for the proposition that a magistrate must consider all factors relevant to the child's best interest when making a custody determination. A parent's move is only one factor to be considered when awarding custody. *See Navarro*, 144 Idaho at 888, 173 P.3d at 1147; *Schultz*, 145 Idaho at 865, 187 P.3d at 1240. Moreover, several Idaho cases have upheld decisions allowing custodial parents to relocate with their children. *See, e.g., Biggers v. Biggers*, 103 Idaho 550, 556, 650 P.2d 692, 698 (1982); *Koester v. Koester*, 99 Idaho 654, 658, 586 P.2d 1370, 1374 (1978); *Merrill v. Merrill*, 83 Idaho 306, 312, 362 P.2d 887, 891 (1961); *Milliron v. Milliron*, 116 Idaho 253, 257, 775 P.2d 145, 149 (Ct. App. 1989). The common theme is not a presumption against relocation, but rather, deference to the trial court.[6]

**b.**
**The Magistrate Did Not Apply a Presumption Against Relocation**

Julie argues that the magistrate erroneously applied an irrebuttable presumption against relocation. She contends that his ultimate conclusion was guided by his findings that "'there is no adequate substitute for frequent physical time' between a parent and child" and that "Sydney's best interests require that she retain frequent and regular contact with both of her parents." According to Julie, these findings indicate that the trial court assumed that "physical proximity is a requirement of Idaho's joint custody law."

Upon examination of the entire opinion, it is clear that the magistrate did not apply a presumption against relocation. While the magistrate could have chosen his words more precisely to accurately reflect the law, a review of the entire opinion indicates that the statements

---

[6] Further, with the exception of *Roberts*, the cases cited by Julie involved a different issue than the one currently before the Court. *Hopper*, *Navarro*, and *Schultz* all dealt with a parent relocating with a child before a custody order had been entered. This case involves a parent seeking to modify an existing custody order to permit relocation and, for that reason, is more akin to *Roberts*.

9

did not play a determinative role in the magistrate's decision. The magistrate considered all of the section 32-717 factors and additional factors relevant to relocation. He also took into account section 32-717B's presumption in favor of joint custody and frequent and continuing contact between both parents and the child. In light of the magistrate's extensive findings, we are unable to conclude that he applied an irrebuttable presumption against relocation.

**c.**
**The Magistrate Did Not Abuse His Discretion by Overemphasizing Any Single Factor**

Although she did not explicitly raise the issue, it appears to be Julie's contention that the magistrate placed too much emphasis on her decision to move. This contention underlies her position that the magistrate applied an irrebuttable presumption against relocation.

A magistrate's custody decision will be upheld if it is not an abuse of discretion and is supported by substantial and competent evidence. *See Weiland*, 139 Idaho at 124, 75 P.3d at 178. A trial court acts within its discretion if it "recognizes the issue as one of discretion; acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices[;] and reaches its decision through an exercise of reason." *Roberts*, 138 Idaho at 403, 64 P.3d at 329. On the other hand, a trial court abuses its discretion when it makes a custody award or modification based on evidence that is insufficient to conclude that the award is in the child's best interest. *Nelson v. Nelson*, 144 Idaho at 713, 170 P.3d at 378. An overemphasis on any single factor is also an abuse of discretion. *Schultz*, 145 Idaho at 863, 187 P.3d at 1238.

Here, the magistrate did not abuse his discretion by concluding that Julie should not be permitted to move to Hawaii with Sydney. First, the magistrate recognized the issue before him as one of discretion. In his findings of fact and conclusions of law he stated that he "recognizes that deciding the issues presented in this case requires the [c]ourt to exercise its[] discretion." Second, the magistrate acted within the limits of his discretion and in accord with applicable legal standards. In concluding that moving to Hawaii would not be in Sydney's best interest, he considered all of the factors listed in section 32-717 and other factors he deemed relevant. Third, the magistrate reached his decision through an exercise of reason. He applied the relevant factors to the evidence before him and weighed the factors to reach his decision. The magistrate concluded that several factors favored Sydney staying in Idaho. Specifically, Sydney's level of adjustment to her home, school, and community; the character and circumstances of all

10

individuals involved; and the need to promote continuity and stability in Sydney's life all weighed against relocation. On the other hand, only one of the section 32-717 factors tended to weigh in favor of Sydney moving with Julie. Namely, in analyzing the relationship between the child and her parents and siblings, the magistrate concluded that Sydney was likely psychologically and emotionally closer to Julie due to Julie's status as Sydney's primary caregiver.

This is not to say that the magistrate's weighing of the factors was completely free of problems. Particularly, the court's focus on Julie's motive for moving is somewhat troubling. The judge stated that Julie's decision to marry David was "self-serving with little regard to the impact on Sydney and her relationship with her father." Further, he regarded the decision as an "end run" around his previous restriction against her moving. These findings by the magistrate are unsupported by the evidence. Julie sought permission to move in order to live with her husband. There is no evidence suggesting that Julie married David with the intent of thwarting Patrick's relationship with Sydney or solely so she could move to Hawaii.[7]

Nonetheless, when viewed as a whole, the magistrate's decision was not an abuse of discretion. Although some of the magistrate's findings could be construed as placing too much emphasis on Julie's motive for moving, these findings were only part of the magistrate's consideration of one factor. The magistrate considered all of the relevant factors and engaged in a lengthy factual analysis. Because the magistrate made such extensive findings and the abuse of discretion standard is very deferential, the magistrate's decision was within the limits of his discretion, consistent with applicable law, and reached through an exercise of reason.

### 3.
### The Magistrate's Findings of Fact and Conclusions of Law Were Supported by the Evidence

Julie argues that the trial court abused its discretion by making findings of fact and conclusions of law that were not supported by the evidence. Specifically, Julie challenges the magistrate's findings relating to her interference with Patrick's relationship with Sydney.

---

[7] Further, there was no evidence presented indicating that Julie and David were aware of the location of David's next assignment at the time they became engaged.

**The Magistrate's Findings of Fact Were Supported by Substantial and Competent Evidence**

Julie contests several of the magistrate's findings relating to her interference with Sydney's relationship with Patrick. She disputes the magistrate's findings that she twice "clandestinely" moved away from Patrick, concealed her whereabouts from Patrick, and engaged others to help her conceal her location from Patrick. Julie contests the magistrate's findings that she has a negative attitude toward Sydney's relationship with Patrick, does not support their relationship, and is not concerned with the impact a move to Hawaii would have on their relationship. She also disputes the magistrate's related findings that she has denied Patrick's requests for extra time with Sydney, has not shared Sydney's school information with Patrick, and has portrayed Patrick in a negative light.

A magistrate's findings of fact will be upheld if they are supported by substantial and competent evidence and are not clearly erroneous. *Reed v. Reed*, 137 Idaho 53, 56, 44 P.3d 1108, 1111 (2002). Evidence is substantial "if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *King v. King*, 137 Idaho at 442, 50 P.3d at 457. On appeal, we view the evidence in favor of the trial court's judgment and will uphold the magistrate's findings of fact even if there is conflicting evidence. *Nelson v. Nelson*, 144 Idaho at 713, 170 P.3d at 378. Additionally, this Court will not make credibility determinations or replace the trial court's findings of fact by reweighing the evidence. *Id*.

The magistrate's findings relating to Julie's prior attempts to interfere with Sydney's relationship with Patrick are supported by substantial and competent evidence. In making his findings, the magistrate relied on two moves Julie made with the children without first informing Patrick. The first move was in 1998,[8] when Julie left Patrick in California and moved with the children to Texas. The second move occurred in 2004 when Julie decided to enroll in an exchange program through Boise State University, in which she intended to spend a semester

---

[8] At one point in his opinion, the magistrate indicated that Julie moved to Texas in 1998 but, at another point, he stated she moved in 1999. The record indicates that Julie moved when Sydney was nine months old, which was in 1998.

studying in Hawaii. In neither instance did Julie discuss her plan to move with Patrick or arrange for visitation between Patrick and Sydney.

Julie's move to Texas supports the magistrate's findings. Julie points out that Patrick knew about and assisted her in her move to Texas, which demonstrates that the move was not clandestine. Testimony elicited from both Julie and Patrick at trial support Julie's assertion.[9] Nonetheless, the move could still be viewed as evidence of Julie's pattern of interfering with Patrick's relationship with Sydney. Patrick did not find out about Julie's planned move until he arrived at their house and discovered that she had removed most of the family's personal belongings. Moreover, in considering the move, the court's focus was not necessarily on its secretive nature but on "Julie's current and prior effort to move Sydney away from Patrick."

Julie's move to Hawaii in 2004 also supports the magistrate's findings. The evidence before the court indicated that Julie did not inform Patrick that she was moving with Sydney to Hawaii, that David refused to tell Patrick where Julie and Sydney were, that Patrick had to hire a private investigator to locate Julie and Sydney, and that it took him over two months to find them in Hawaii. Because the facts presented support the magistrate's findings that Julie secretly moved with Sydney to Hawaii and that the move interfered with Patrick's relationship with Sydney, the findings were based on substantial and competent evidence. The magistrate could have reasonably concluded that Julie's prior moves demonstrated a pattern of interference with Patrick's and Sydney's relationship.

Similarly, there is substantial and competent evidence to support the magistrate's findings regarding Julie's negative attitude toward Patrick and his relationship with Sydney. Patrick testified that there were times that Julie would not allow him to see Sydney during his visitation hours and that Julie would not normally permit additional visitation. Additionally, Julie made several negative references about Patrick to the court and to Dr. Lipetzky. Julie referred to Patrick as controlling and emotionally abusive. She also stated that Patrick never had a positive relationship with her two older children, drank and drove with Sydney in the car, was verbally abusive, and physically abused her older children. Patrick admitted that he believed in

---

[9] Patrick testified that he did not approve of Julie's move to Texas but that he had "discussed it [with her] before she left." Patrick also testified that he frequently visited Julie and the children in Texas and that he sent them money every month.

13

disciplining a child by spanking, however, the magistrate concluded that Patrick's actions did not rise to the level of abuse. None of the other allegations were substantiated by credible testimony.

Based on his interactions with Julie, Dr. Lipetzky also concluded that Julie has a negative attitude toward Patrick. Dr. Lipetzky noted that "Julie went to lengths to attempt to show Pat[rick] as an unfit parent" and that she minimized the positive aspects of Patrick's relationship with the children. Julie also instructed Sydney to report her "fear of [Patrick]" in her interview with Dr. Lipetzky. For these reasons, Dr. Lipetzky concluded that Patrick would "be more likely to foster a positive relationship between Sydney and Julie" than Julie would between Patrick and Sydney.

Although there is conflicting evidence that suggests that Julie has at times been supportive of Patrick's relationship with Sydney,[10] the magistrate did not abuse his discretion in concluding that Julie interfered with their relationship and had a negative attitude toward Patrick. The magistrate was in the best position to judge the credibility of the witnesses and weigh the conflicting evidence. Enough evidence was presented for a reasonable mind to make the same findings as the magistrate.

## C.
## The Magistrate's Custody Order Does Not Violate Julie's Right to Travel

Julie argues that the custody order preventing her from moving to Hawaii with Sydney violates her right to travel because she is Sydney's custodial parent. She also maintains that the best interest of the child standard is not a compelling government interest sufficient to justify a restriction on her right to travel. She cites decisions from other state courts that have adopted that stance[11] and urges this Court to do likewise.

---

[10] Julie testified that she informed Patrick about Sydney's programs, concerts, and other school events. She gave Patrick redacted copies of Sydney's report cards and sent Sydney to Patrick's with a bag containing school papers. Additionally, Patrick testified that Julie contacted him to participate in a career day at Sydney's school and that she sometimes allowed Sydney to spend extra time with him. The evidence also showed that Julie has never violated a court order granting Patrick formal visitation. The instances where Julie did interfere with Patrick's visitation occurred before a custody order was in place.

[11] Julie cites *Rideout v. Riendeau*, 761 A.2d 291, 301 (Me. 2000) (holding that the best interest of the child was not a compelling government interest that justified interfering with a parent's right to the custody and control of his or her child by granting grandparent visitation); *In re Parentage of C.A.M.A.*, 109 P.3d 405, 413 (Wash. 2005) (similar); *Mizrahi v. Cannon*, 867 A.2d 490, 498 (N.J. 2005) (holding that grandparents seeking visitation with child over parent's objection must demonstrate the child will be harmed without visitation and that showing visitation is in the child's best interest is insufficient to overcome a parent's decision to withhold visitation). Those cases are not particularly relevant here, however, since they did not decide whether the best interest standard justified a restriction on a parent's right to travel. Moreover, the cases dealt with whether the best interest standard was sufficient to

14

The United States Constitution protects the fundamental right of United States citizens to travel freely from state to state and to reside in the state of their choice.[12] *Jones v. Helms*, 452 U.S. 412, 418 (1981). The right to travel contains three primary guarantees: the right of a citizen from one state to travel to another state, the right to be treated equal to citizens of another state upon taking up residence in that state, and the right of travelers temporarily in a state to be regarded as welcome visitors. *Saenz v. Roe*, 526 U.S. 489, 500 (1999). Generally, state action penalizing a citizen for leaving or entering a state violates the citizen's right to travel. *Jones*, 452 U.S. at 419. State laws that deter citizens from travelling also implicate the right. *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). Nonetheless, a state may restrict a citizen's right to leave the jurisdiction when doing so is necessary to serve a compelling government interest. *Shapiro v. Thompson*, 394 U.S. 618, 634 (1969), *overruled on other grounds by Edelman v. Jordan*, 415 U.S. 651 (1974).

**1.**
**The Custody Order Implicates Julie's Right to Travel**

State action forcing a citizen to choose between exercising his or her fundamental right to travel and another constitutionally protected right violates the right to travel unless it is justified by a compelling state interest. *Dunn v. Blumstein*, 405 U.S. 330, 342 (1972). In *Dunn*, Tennessee had enacted a durational residency requirement that prohibited new residents from voting unless, by the time of the election, they had been residents of the state for one year. *Id.* at 331. Several new residents challenged the law as unconstitutional in a class action suit. *Id.* at 331-32. The Supreme Court held that the law was unconstitutional and violated the new residents' right to travel. *Id.* at 360. The Court concluded that the law forced citizens to choose between their basic right to vote and their right to travel and, therefore, was only valid if it was necessary to serve a compelling government interest. *Id.* at 342. Because the law was not necessary to serve the state's interest in preventing voter fraud and because less restrictive means

---

overcome a parent's decision to deny a third party's request for visitation, not with whether it was enough to limit another parent's visitation rights. *See Rideout*, 761 A.2d at 301; *Parentage of C.A.M.A.*, 109 P.3d at 413; *Mizrahi*, 867 A.2d at 498; *see also Troxel v. Granville*, 530 U.S. 57, 73-74 (2000) (plurality).

[12] The Due Process Clauses of the Fifth and Fourteenth Amendments are often considered the sources of this guarantee. *Jones*, 452 U.S. at 418-19. However, the precise provision establishing the right to travel has been a matter of disagreement. *See id.* at 418; *Edwards v. California*, 314 U.S. 160, 172-73 (1941) (relying on the Commerce Clause to invalidate statute restricting interstate migration); *Edwards*, 314 U.S. 160, 178 (Douglas, J., concurring) (concluding that the Privileges and Immunities Clause of the Fourteenth Amendment protects the right

15

existed to further the state's goal, the Court concluded the statute was unconstitutional. *Id.* at 346, 353.

The magistrate's decision to transfer custody of Sydney to Patrick if Julie moves to Hawaii implicates Julie's right to travel. Although the order does not absolutely prohibit Julie from moving to Hawaii, it deters her from exercising her right to travel by taking away her status as Sydney's custodial parent if she moves. It also forces her to choose between two constitutionally protected rights: her right to travel and her right to raise her child.[13] Because the order implicates Julie's right to travel, it must serve a compelling government interest to be valid.

**2.**
**The Restriction on Julie's Right to Travel is Necessary to Serve a Compelling Government Interest**

Julie argues that the best interest of the child standard is not a compelling government interest that justifies restricting her right to travel. We disagree.

**a.**
**Ensuring Sydney's Best Interest is a Compelling Government Interest**

The Idaho Court of Appeals has ruled that protecting the best interest of a child is a compelling government interest. *Ziegler v. Ziegler*, 107 Idaho 527, 691 P.2d 773 (Ct. App. 1985) (per curiam). In *Ziegler*, a mother challenged a child custody award granting her primary physical custody and requiring the children to live within a 100 mile radius of Coeur d'Alene. *Id.* at 533, 691 P.2d at 779. The mother argued that the residency restriction violated her right to travel since she had primary physical custody of the children. *Id.* The Court of Appeals upheld the residency restriction on the ground that it was justified by a compelling government interest, namely, ensuring the best interests of the children.[14] *Id.* at 534, 691 P.2d at 780. In *Weiland v.*

_____

to travel); *Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 902 (1986) (noting that the right to travel has been attributed to concepts of federalism).

[13] This Court has recognized that the Fourteenth Amendment guarantees a parent's fundamental right to the "custody, care and control of his or her child." *See Leavitt v. Leavitt*, 142 Idaho 664, 670, 132 P.3d 421, 427 (2006) (quoting *In re Bush*, 113 Idaho 873, 875, 749 P.2d 492, 494 (1988)); *see also Troxel v. Granville*, 530 U.S. 57, 66 (2000).

[14] Julie argues that *Ziegler* only requires interference with a parent's right to travel when necessary and that interference is not necessary unless a parent poses a risk of fleeing with the children. This characterization of *Ziegler* is misleading. *Ziegler* requires interference when necessary to serve the child's best interest. In *Ziegler*, the Court of Appeals, quoting the lower court's opinion, stated "the best interest of the children dictates that they should have the love, support, guidance and companionship of both their parents . . . and assuring the maximum

*Ruppel*, 139 Idaho 122, 75 P.3d 176 (2003), this Court cited *Ziegler* in rejecting a similar challenge to a child custody award that granted a mother custody as long as she remained in Idaho. *See id*. at 125, 75 P.3d at 179. We did not expressly adopt the rationale or holding of *Ziegler*, but noted that it was proper for the trial court to weigh the custodial parent's right to travel against the child's interest in maintaining a relationship with the other parent. *Id.*

Relocation cases such as the one before us require us to strike a balance between two equally important, yet conflicting, constitutional rights. If Julie were permitted to move to Hawaii with Sydney, Patrick would be deprived of his right to the custody, care, and control of his child. There is no reason why Julie's constitutional right to travel should automatically trump Patrick's constitutional right to raise his child. Similarly, Patrick's right to raise Sydney should not automatically outweigh Julie's right to travel. Accordingly, we hold that the best interest of the child standard is the most appropriate way to fairly balance parents' competing constitutional rights in relocation cases and is a compelling government interest. In this case, the magistrate determined that it was not in Sydney's best interest to move to Hawaii, which provides the state a compelling reason for restricting Julie's right to travel.

**b.**
**The Custody Order is Necessary to Serve a Compelling Government Interest**

A residency restriction is necessary to serve a compelling government interest when it is the least restrictive way to achieve the government's objective. *Dunn*, 405 U.S. at 342. The United States Supreme Court has held that the least restrictive means test applies to restrictions on the right to travel. *See, e.g., Id*. at 342-43. Assuming, but not deciding, that the least restrictive means test applied, the Court of Appeals in *Ziegler* concluded that the 100 mile residency restriction was not overly broad. *Ziegler*, 107 Idaho at 535, 691 P.2d at 781. The court reasoned that the order did not restrict the mother's right to travel outside the 100 mile zone for temporary purposes such as vacation and business. *Id.* Moreover, the mother could still move outside the area by giving up primary custody of the children. *Id.* The fact that the order only required the mother to seek the court's authorization before moving and did not completely prohibit her from relocating was also important. *Id.* Because the order was the least restrictive way of ensuring the children's best interests, it did not violate the mother's right to travel. *Id.*

---

opportunities for [receiving those benefits] is a compelling state interest." *Ziegler*, 107 Idaho at 534, 691 P.2d at 780. The parents' flight risk was only part of the best interest analysis.

Here, because the magistrate concluded that it is not in Sydney's best interest to move to Hawaii, the custody order is necessary to serve a compelling government interest. There is no less restrictive alternative to achieve the government's objective. The magistrate's only other option would have been to grant Julie primary custody of Sydney and force her to live in Idaho. Although it would undoubtedly be a difficult choice for Julie to make, at least under the current custody order she can either move to Hawaii and give up primary custody of Sydney or stay in Idaho and retain custody. Further, like the child custody order in *Ziegler*, the custody order in this case does not prohibit Julie from temporarily leaving Idaho to go on vacation or business trips. She can even take Sydney on these temporary departures, provided doing so does not interfere with Patrick's visitation. For these reasons, the custody order is necessary to serve a compelling government interest and does not violate Julie's right to travel.

## D.
## Attorney Fees

Patrick requests an award of attorney fees pursuant to Idaho Code sections 12-120 & 12-121 and Idaho Rule of Civil Procedure 54(e)(1). He argues that Julie brought the appeal frivolously, unreasonably, or without foundation. However, Patrick presented no argument or authority to support his request for an award of fees and, therefore, we deny his request. *See, e.g., Davis v. Parrish*, 131 Idaho 595, 599, 961 P.2d 1198, 1202 (1998) (declining to address respondent's request for an award of attorney fees because she failed to support her request with argument or authority).

## III.

The magistrate's denial of Julie's petition is affirmed. Patrick's request for attorney fees is denied. Costs awarded to Patrick.

**Justices BURDICK and HORTON concur.**

**Chief Justice EISMANN, concurring in the result.**

I cannot concur in the majority opinion because it disregards the public policy declared by Idaho Code § 32-717B.

**A. Idaho Code § 32-717B creates a presumption that a parent not be permitted to move away with a child if doing so would prevent the other parent from having frequent and continuing physical custody of the child.**

18

Idaho Code § 32-717B(4) declares, "[A]bsent a preponderance of the evidence to the contrary, there shall be a presumption that joint custody is in the best interests of a minor child or children." "'Joint custody' means an order awarding custody of the minor child . . . to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child . . . of frequent and continuing contact with both parents." *King v. King*, 137 Idaho 438, 445, 50 P.3d 453, 460 (2002) (citation omitted). Joint custody also requires that each parent have physical custody for significant periods of time. I.C. § 32-717B(2).

Section 32-717B(4) creates a presumption that it is in the best interests of a child that both parents have *frequent* physical custody of the child.[15] Typically, in order for that to be able to occur, the child will have to be living in physical proximity to both parents.

If a parent chooses to move away from where the child is residing, that parent may not be able to have frequent physical custody of the child. For example, in *King v. King*, the mother, the father, and the child resided in Jefferson County, Idaho. The mother chose to move from there to the state of Michigan. In the ensuing divorce action, the father was granted physical custody of the child for eighty percent of the time and the mother was granted physical custody for twenty percent. In responding to the mother's challenge to the division of physical custody, we stated the obvious, "In this case, Melissa chose to move from Idaho to Michigan. The practical effect of her move is to limit the amount of time that she can spend with Megan." 137 Idaho at 445, 50 P.3d at 460. Conversely, permitting a parent to move away with a child will typically prevent the other parent from having frequent physical custody of the child. Obviously, if there is a presumption in favor of joint custody, then there is a presumption against allowing one parent to move away with the child if the move would prevent the other parent from having frequent and continuing physical custody of the child. To hold otherwise would render the statutory presumption meaningless.

The statutory presumption is based upon the legislature's determination that it is in the best interests of a child for both parents to have frequent and continuing physical custody of the child. To overcome that presumption, the parent wishing to move away with the child must prove that it is in the child's best interests for the other parent not to have frequent and

---

[15] The presumption does not apply if one of the parents is a habitual perpetrator of domestic violence. I.C. § 32-717B(5).

continuing physical custody of the child. A parent can decide that other things in the parent's life are more important than maintaining a close relationship with the child, and move away. The court cannot prevent a parent from doing so. The parent should not, however, be permitted to move away with the child simply because the moving parent concludes that other things in his or her life are more important than the other parent's ability to maintain a relationship with the child.

This Court has in the past guarded against actions that would interfere with the relationship between a parent and child. In *Weiland v. Ruppel*, 139 Idaho 122, 75 P.3d 176 (2003), we upheld the trial court's refusal to permit a mother to move to Portland, Oregon, with the parties' child because of the adverse impact such a move would have on the child's relationship with his father, who resided in Idaho. The trial court had concluded that "the adverse impact upon [the child's] relationship with his father will outweigh any potential benefits he might receive by virtue of his mother's relocation to Portland." 139 Idaho at 125, 75 P.3d at 179. In *Hopper v. Hopper*, 144 Idaho 624, 167 P.3d 761 (2007), a mother surreptitiously moved with the parties' five-month-old child to Montana. In a subsequent divorce action filed by the father, the trial court permitted the mother to remain in Montana with the child, and ultimately awarded her primary physical custody. This Court vacated the custody decree, stating, "The mother should have been ordered to return the child to Idaho where the father might exercise his rights as an equal parent and have this case decided with the underlying legal and social principle that it is in the best interests of a child to have a continuing relationship with both parents." 144 Idaho at 627, 167 P.3d at 764. In *Thurman v. Thurman*, 73 Idaho 122, 245 P.2d 810 (1952), this Court reversed an order changing custody to the father based upon this Court's findings on appeal that the father had alienated the children from the mother. In doing so, this Court stated:

> The best welfare of minor children is promoted by having such children respect and love both parents. This is natural and every effort should be directed to the end that such respect and affection will not be destroyed and alienated; any other course is not in the interest of and for the best welfare of such minor children. . . . .
> The acts and conduct of the custodial parent, resulting in the alienation of the love and affection which children naturally have for the other parent, is a vital and very serious detriment to the welfare of such children and is grounds for modification of the decree with respect to such custody.

20

73 Idaho at 128, 245 P.2d at 814.

Giving effect to the presumption created by Idaho Code § 32-717B is consistent with our prior decisions preventing one parent from interfering with the relationship between the other parent and their child or children. The purpose of the presumption in Section 32-717B is to promote the best interests of the child by assuring that both parents have the opportunity to have frequent and continuing physical custody of their child for significant periods of time. Such periods of physical custody are essential to develop and maintain a close relationship with the child. One parent should not be able to interfere with that relationship by seeking to alienate the child towards the other parent, by preventing the other parent from having contact with the child, or by moving away with the child if it would prevent the other parent from having frequent and continuing physical custody of the child. In any of those circumstances, the result is the same. One parent is acting contrary to the best interests of the child by preventing the child from developing and having a healthy relationship with the other parent. In this case, Julie failed to overcome the statutory presumption that it was in Sydney's best interests to be in the physical custody of Patrick for frequent periods of time.

## B. The Constitution of the United States Does Not Require that Jones Be Permitted to Move Away with the Parties' Child.

Julie contends that her constitutional right to travel will be infringed if she is required to leave the parties' daughter behind when she moves to Hawaii. More than her constitutional rights are at issue in this case. The liberty interests protected by the United States Constitution include "the interest of parents in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). Parents have a fundamental right "to make decisions concerning the care, custody, and control of their children." *Id*. To exercise her right to travel, Julie seeks to deprive Patrick of his constitutional and statutory rights to the care and custody of his daughter.

Our freedoms to engage in various activities also include the freedom not to do so. The freedom to exercise religion includes the freedom not to do so. As the Supreme Court stated in *Lee v. Weisman*, 505 U.S. 577, 621 (1992) (citation omitted), "[L]aws that coerce nonadherents to 'support or participate in any religion or its exercise,' would virtually by definition violate their right to religious free exercise." The freedom of speech also "prohibits the government from telling people what they must say," *Rumsfeld v. Forum for Academic and Institutional*

21

*Rights*, 547 U.S. 47, 61 (2006), and from the government "forc[ing] one speaker to host or accommodate another speaker's message." *Id.* at 63. The freedom of press includes the right not to print. "A responsible press is an undoubtedly desirable goal, but press responsibility is not mandated by the Constitution and like many other virtues it cannot be legislated." *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974). Likewise, "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984).

In *Shapiro v. Thompson*, 394 U.S. 618, 629 (1969), the United States Supreme Court stated that "the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement." *Shapiro* struck down a one-year residency requirement before becoming eligible for welfare benefits in order to deter indigents from moving to the state solely to obtain larger benefits. As the Court stated, "More fundamentally, a State may no more try to fence out those indigents who seek higher welfare benefits than it may try to fence out indigents generally." *Id.* at 631. Obviously, if the state could not "fence out indigents" it could also not force them to leave after they arrived. Their right to be free to travel into the state would be hollow unless it also included a right not to be coerced into leaving the state.

Julie contends that her right to travel will be infringed if she cannot move to Hawaii with Sydney. If Julie is permitted to move to Hawaii with their daughter, Patrick would have to move to Hawaii in order for him to have frequent physical custody of Sydney, infringing his constitutional right not to travel. Julie's constitutional rights are not more important than Patrick's constitutional rights. Therefore, the deciding factor must be the best interests of the child, applying the presumption created by Idaho Code § 32-717B(4).

For the above reasons, I concur in the result.


**Justice W. JONES CONCURS**.